Elizabeth V. BOGOSIAN,
Plaintiff, Appellee,

v.

WOLOOHOJIAN REALTY CORP.,
Defendant, Appellant.

No. 90–1696.

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1990.

Decided Jan. 15, 1991.

---

William R. Grimm with whom Robert M. Duffy and Hinckley, Allen, Snyder & Comen, Providence, R.I., were on brief, for defendant, appellant.

Matthew F. Medeiros with whom Jeffrey C. Schreck, Robert Karmen and Flanders & Medeiros Inc., Providence, R.I., were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and CAFFREY,** Senior District Judge.

BREYER, Chief Judge.

This case requires us to interpret two provisions of Rhode Island's Corporations' statute related to corporate buyouts of shareholders petitioning for corporate dissolution. It also raises a question about appealability. A brief description of procedural background will help the reader understand the legal issues.

Elizabeth Bogosian, a one-third owner of the Woloohojian Realty Corporation ("WRC") brought this diversity action seeking dissolution of WRC. The relevant law, Rhode Island Gen.Laws § 7–1.1–90 *et seq.* (see Appendix), gives a court "full power to liquidate the assets and business of a corporation" under certain specified circumstances, where, for example, shareholders are in serious conflict, or a majority acts oppressively towards a minority. The statutory provisions also permit a corporation, faced with a petition for dissolution, to

---

* Of the Fifth Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

"avoid ... a dissolution" by offering instead to "buy out" a petitioning minority shareholder. They require the corporation wishing to avoid dissolution to make "an election to purchase the shares owned by the petitioner at a price equal to their fair value." Rhode Island Gen.Laws § 7–1.1–90.1. They foresee the parties negotiating about that value. They then specify what will occur in the event of a deadlock:

> If the parties are unable to reach an agreement as to the fair value of such shares, the court shall, *upon the giving of a bond or other security* sufficient to assure to the petitioner payment of the value of such shares, stay the [liquidation or dissolution] proceeding and determine the value ... as of the close of business on the day on which the petition for dissolution was filed.

*Id.* (emphasis added).

After Mrs. Bogosian filed her dissolution petition, WRC sought to avoid dissolution by electing a "buyout." On February 16, 1989, it filed with the court "an election to purchase" Mrs. Bogosian's shares at their fair value. It negotiated with her about the value of her shares. The parties could not reach agreement. Consequently, on May 15, 1989, WRC asked the court to appoint a special master to value the shares.

Sometime during the course of the next year, however, WRC apparently changed its mind about the desirability of the buyout. Although the statute says that, as a precondition for the court's valuing the minority shares, the corporation must "giv[e] ... a bond or other security sufficient" to guarantee payment of the shares' fair value, WRC refused to do so. Mrs. Bogosian asked the court to require it to put up this security.

On July 13, 1990, fourteen months after WRC elected to pay Mrs. Bogosian the fair market value of her shares, the court, over WRC's objection, entered two orders that are the subject of this appeal. First, it ordered WRC to provide Mrs. Bogosian with a $10 million mortgage on WRC's "Jamestown Apartments" as security to guarantee payment of the shares' value. Second, the court ordered WRC to provide Mrs. Bogosian with an "interim distribution" of $100,000 plus $10,000 per month "to continue until the entry of a final judgment determining the fair value of" her shares.

Subsequently, the court and the parties took various other actions, which do not directly concern us. On July 31, the court appointed the special master that WRC had requested. On August 10, WRC asked the court to permit it to revoke its "buyout election," and on October 5 the court denied WRC's request.

As we have mentioned, this appeal involves only the district court's two July 13 orders. WRC asks us to find the district court's order to post a mortgage as security and its order to make an "interim distribution" unlawful. Mrs. Bogosian replies that the court's July 13 orders are not now appealable; and, she adds, in any event, they are lawful. We agree with WRC that the two orders are appealable, but we also agree with Mrs. Bogosian that they are lawful.

## I

### *The "Mortgage/Security" Order*

#### A

##### *Appealability*

■ The particular order in question says that WRC

> shall forthwith execute a mortgage in favor of Elizabeth V. Bogosian against the real property known as Jamestown Apartments, in the amount of ten million dollars ($10,000,000), in a form to be submitted for the court's approval....

The purpose of the order is to provide Mrs. Bogosian with security for the payment for her shares to which she may become entitled. The order, in our view, is a mandato-

ry injunction. It is therefore appealable under 28 U.S.C. § 1292(a)(1) (authorizing appeals of "interlocutory orders of district courts granting, continuing, modifying, refusing or dissolving injunctions....").

The order at issue here is directed to a party. It requires that party to take action. It is more than minimally coercive. It has serious consequences. It is enforceable through contempt. And, it is not simply related to court procedures. Its subject matter (the property) either itself consists of, or acts as a substitute for, in whole or in part, the substantive relief petitioner seeks in this case. Relevant authority suggests that these characteristics make it a mandatory injunction for purposes of appeal. *See I.A.M. Nat. Pension Fund Ben. Plan v. Cooper Industries, Inc.,* 789 F.2d 21, 24 (D.C.Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986) (an injunction, for § 1292(a)(1) purposes is "any order directed to a party, enforceable by contempt, and designed to accord or protect, some or all of the substantive relief sought" in the action) (citations omitted) (quotations omitted); 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3922 (1990 Supp.) at 10, 26 (same); *cf. International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir. 1963) (§ 1292(a)(1) relates "to injunctions which give *or aid in giving* some or all of the substantive relief sought") (emphasis added); *but cf. Chronicle Pub. Co. v. Hantzis,* 902 F.2d 1028, 1030–31 (1st Cir. 1990) (same, but omits concept of *protecting* or *helping to secure* the final relief sought, which omission seems inadvertent in context of the case).

We recognize one possible argument to the contrary. For historical reasons, court ordered "attachments," even where coercive and designed to protect ultimate relief, are typically considered to be "legal," not "equitable," in nature, and therefore are not "injunctions" for § 1292(a)(1) purposes. One might argue that the order before us is not an injunction, but a kind of attachment of property.

We are not persuaded by this argument, however, because, technically speaking, the order before us is not an "attachment" under Rhode Island law. Under Rhode Island law "attachment" refers to a specific, detailed statutory procedure, through which a judge, after a hearing, issues a specific writ that a court officer leaves with a town clerk or recorder of deeds, which writ "creates a lien on the property attached which is held in the custody of the law." *Everett v. Cutler Mills,* 52 R.I. 330, 333, 160 A. 924 (1932); *In re Gibbons,* 459 A.2d 938, 939 (R.I.1983); Rhode Island Gen.Laws § 10–5–1 *et seq.* The order here has issued against a party, not a piece of property, the court's officers did not serve it on a town clerk or recorder, and it does not have the effect of placing the property in the court's custody.

We recognize that some circuits have considered orders that have much the same effect as "attachments" as if they were attachments, thereby restricting appeals of orders requiring security. *See Rosenfeldt v. Comprehensive Accounting Service Corp.,* 514 F.2d 607, 609–10 (7th Cir.1975) (order to deliver accounts receivable and clients is unappealable attachment); *Hitachi Zosen Clearing, Inc. v. Tek–Matik, Inc.,* 846 F.2d 27, 28 (6th Cir.1988) (order to post a letter of credit as security for preliminary injunction was not appealable). This circuit, however, perhaps recognizing the historical, nonfunctional, roots of the "attachment" exception, has not limited appeals. Rather, where, as here, an order that is not, technically speaking, an attachment operates against a party, requires that party to do more than simply deliver property to the court, concerns property that constitutes or protects part of the final relief sought, and threatens harm if appeal is delayed, the court has considered the order an appealable injunction, not a nonappealable attachment. *See Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 45–47 (1st Cir.1986) (order not to dispose of $4,000,000 and to place it in interest bearing account

is appealable injunction); *but cf. Trustees of Hospital v. Compania Aseguradora,* 672 F.2d 250, 251 (1st Cir.1982) (bond *producing only "minimal" harm if appeal delayed* not appealable injunction) (emphasis added). The Second Circuit has taken a similar approach. *See Inter–Regional Financial Group, Inc. v. Hashemi,* 562 F.2d 152, 154 (2d Cir.1977), *cert. denied,* 434 U.S. 1046, 98 S.Ct. 892, 54 L.Ed.2d 798 (1978) (order directing delivery of stock certificates to clerk as security for judgment is appealable injunction); *In re Feit & Drexler, Inc.,* 760 F.2d 406, 412 (2d Cir. 1985) (order directing defendant to place property in custody of her attorney as security for judgment is appealable injunction); *cf. Centurion Reinsurance Co. v. Singer,* 810 F.2d 140, 144–45 (7th Cir.1987) (order denying defendant's request to restrain plaintiff from disposing of funds is appealable denial of injunction).

We conclude that, if an order is, in all other relevant respects an appealable injunction, the fact that it *resembles,* but is not, technically speaking, an attachment will not normally make a critical difference. In light of the weight of legal authority taking this approach, we find the order at issue here appealable.

### B

#### The Merits

WRC argues the merits as follows: First, it correctly says that the statute leaves it perfectly free to decide whether or not to buy out a shareholder petitioning for dissolution. *See* Rhode Island Gen.Laws § 7–1.1–90.1. Second, it follows (says WRC) that, with equal freedom, it can revoke a previous buyout decision. Third, it follows further (says WRC) that it can, in effect, revoke a previous buyout election simply by refusing to put up security during the court-controlled "buyout valuation" proceeding, thereby ending the proceeding, and requiring the court to act upon the original petition for dissolution instead.

The problems with this argument lie at steps two and three. It does not follow at all from the fact that a corporation can freely *elect* to buy out a minority shareholder that the corporation can freely *revoke* the election once made. To the contrary, the Rhode Island statute makes certain critical legal events—the termination of the petitioner's rights in the corporation, the valuation date for her shares—turn upon *election.* Given these legal facts, to permit totally free revocation would permit the corporation to manipulate the amount it will eventually owe by electing buyout and subsequently revoking its election in order to secure unfair financial advantages. (It could, for example, elect to buy out shares where the market has risen, delay the proceedings in order to see if the corporate's assets decline in value, and then revoke its election if they do so but not otherwise.) Thus, commentators have urged, and two courts (in other states with somewhat different statutes) have held, that a corporation can revoke a buyout election, *only with the court's permission. See* Davidian, *Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders,* 56 St. John's L.Rev. 25, 71 (1981) ("Once made the election should remain irrevocable so as to avoid any benefit to the majority by virtue of delay tactics."); *Brodsky v. Seaboard Realty Co.,* 206 Cal. App.2d 504, 24 Cal.Rptr. 61 (1962) (statute resembling Rhode Island statute interpreted to require court's permission for revocation); *cf. Rey v. Pan American Cash and Carry Corp.,* 152 A.D.2d 246, 548 N.Y.S.2d 524, 527 (1989) (revocation requires court's permission; but New York statute *expressly* limits revocation and dicta in case suggests different result without such a limitation). If Rhode Island's statute (which does not expressly mention revocation) does not permit a corporation to revoke its election at will, *a fortiori* it cannot permit the corporation to accomplish the same result by simply refusing to put up valuation-proceeding security.

■ We need not decide the "free revocation" issue definitively, however, for, even assuming (purely for the sake of argument) that Rhode Island courts would interpret Rhode Island's statute as providing a free right to revoke a buyout election, we should not interpret the "security" language as giving a corporation total freedom to decide not to put up security. It would make virtually no sense to interpret the "security" language as if a corporation, after asking for a valuation, could decide not to post the requisite security before it explicitly revokes its buyout election. The statute certainly does not say the corporation can do this, and we fail to see what purpose such a reading could serve. Why would Rhode Island adopt a statute that permitted a corporation total freedom—after having elected to buy out a minority shareholder, after having reached a valuation impasse, and after having asked the court to resolve the impasse, but *before* revoking its election—to withhold the security for which the statute calls? To read the statute in this way would simply promote confusion and add one, additional, obfuscatory weapon to the arsenal of a corporation seeking to delay valuation proceedings while it decided (in light of changing property values) whether or not to revoke a prior election. The more straightforward interpretation of the statute (granting, for the moment and purely for argument's sake, WRC's doubtful underlying "free revocability" assumption) is (1) the corporation may freely elect to buy the petitioning dissenters' shares, and (2) it may later freely revoke that election, but (3) unless and until it explicitly makes such a revocation, the judge, in the case of a valuation impasse, has the legal power to require it to satisfy the statutory "security" requirements.

For these reasons, we conclude that, whether or not the Rhode Island statute means to provide a corporation with total freedom to change its mind and revoke a previous buyout election, the Rhode Island statute gives the court, faced with a buyout election and a valuation impasse, the legal power to require the corporation to post security.

■ WRC makes one additional argument. It says that, even if the court has the power to require security, the amount of security that the court required, namely a mortgage for $10 million, was excessive. The record shows, however, that Mrs. Bogosian, in an affidavit, swore her shares were worth $9 million. *See Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729, 739 (1st Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 (1983) ("an owner of a business is competent to give his opinion as to the value of his property"). It also indicates that in a different case, her brother's executors posted a $10 million bond as security for a one-third ownership interest in WRC. Moreover, Mrs. Bogosian is entitled to statutory interest on her shares which is accumulating at a rate of 12%. We cannot say that the court required security in excess of what the Rhode Island statute permits, namely an amount "sufficient to assure to the petitioner payment of the value of such shares." Rhode Island Gen.Laws § 7-1.1-90.1.

## II

### *The "Interim Distribution" Order*

#### A

#### *Appealability*

■ The order requiring WRC to pay Mrs. Bogosian $100,000 plus $10,000 per month during the pendency of the suit, with all payments credited against her final award, is appealable under 28 U.S.C. § 1292(a)(1) for the same reasons as the security order; it is a mandatory injunction. It is directed to a party (WRC), it orders that party to take a set of particular actions (sending money each month), it is more than minimally coercive, it has serious consequences, it is enforceable through contempt, and it provides at least part of

the relief sought by the suit. *See Chronicle Publishing Co. v. Hantzis,* 902 F.2d at 1030–31; *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); *Baltimore Contractors Inc., v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955); *cf.* discussion at pp. 900–902, *supra.* Other courts have held similar kinds of payment orders appealable as "mandatory injunctions." *See Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 828 (D.C.Cir.1984) (allowing without discussion appeal of mandatory preliminary injunction); *United States v. Price,* 688 F.2d 204, 215 (3d Cir.1982). We are aware of no authority to the contrary.

## B

### *The Merits*

WRC makes two arguments designed to show the order is unlawful. First, WRC argues that, in issuing this order the court must find authorization in Rhode Island, not in federal, law. *See Friends for All Children v. Lockheed Aircraft Co.,* 746 F.2d at 828 n. 18 (looking to state law to determine if equitable relief is available); *Sims Snowboards, Inc. v. Kelly,* 863 F.2d 643, 647 (9th Cir.1988) (state law governs availability of equitable remedies); *but see Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 646 F.2d 800, 806 (2d Cir.1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision."). And, it says that Rhode Island law does not provide the legal power to order equitable relief in a "buyout." Accepting for the sake of argument WRC's premise about the relevant source of law, we nonetheless disagree with its conclusion. We believe it fairly obvious that Rhode Island law authorizes equitable relief.

For one thing, the language and the structure of Rhode Island's corporate statute indicates that courts have authority to issue equitable orders in dissolution-related buyout proceedings. In § 7–1.1–91(a), that statute specifically says that

in proceedings *to liquidate the assets and business of a corporation the court shall have general equity jurisdiction and power* to issue such orders, injunctions, and decrees as justice and equity may require. . . .

Rhode Island Gen.Laws § 7–1.1–91(a). Just two sections earlier, the statute refers to "an action by a shareholder" brought to obtain "dissolution" of a corporation as one of several instances in which the court has "full power *to liquidate the assets and business of a corporation.*" The statute's "buyout" language is contained in a section sandwiched in between. The placement of the section suggests that the later "equity power" provision applies to a "buyout," which takes place within the context of the larger "liquidation" proceeding. Nothing in the statute's language suggests the contrary. Indeed, the procedure outlined in the statute supports this view, for it refers to a "buyout" as triggered by "filing with the court . . . an election to purchase" either before the court has scheduled a hearing on a dissolution petition, or after a hearing on a dissolution petition "in the discretion of the court."

For another thing, traditionally corporate liquidation and reorganization proceedings are proceedings in equity. *See* Davidian, *Corporate Dissolution in New York: Liberalizing the Rights of Minority Shareholders,* 56 St. John's L.Rev. at 37–43. Court supervised buyouts are simply one method of restructuring a corporation intended to avoid the more drastic dissolution remedy. *See generally* Thompson, *Corporate Dissolution and Shareholders' Reasonable Expectations,* 66 Wash.U.L.Q. 193, 231–36 (1988). WRC provides us with no reason, nor can we think of any, why a legislature would want a court to lose its equity powers when a corporation, in the midst of a dissolution proceeding, elects the buyout alternative.

Second, WRC apparently concedes that a court of equity may, in an appropriate case, order interim money payments. *Compare Corbin v. Corbin,* 429 F.Supp. 276, 283

(M.D.Ga.1977) (district court ordered corporation in dissolution proceedings to make interim payments to shareholder) *with* *Sims v. Stuart*, 291 F. 707, 707–08 (D.C.N.Y.1922) (L. Hand, J.) (noting that a court of law, in a legal, not an equitable, action, lacks the power to "give" money payments as "final relief in advance of answer and trial"). But, WRC argues that the particular circumstances of the present case do not justify the order. In particular, if WRC wins other lawsuits it has brought against Mrs. Bogosian, WRC believes it possible that she might end up owing WRC more than the interim payments, and WRC might find it difficult to retrieve its money.

On the other hand, neither the district court nor this court knows who will win the various lawsuits WRC has brought elsewhere. The district court, and this court, do know that WRC will likely have to pay Mrs. Bogosian a considerable share of its assets (or value of its shares) as a result of this litigation. It is also clear that, as of the date WRC elected to buy out Mrs. Bogosian, she lost all rights in her shares. *See* Rhode Island Gen.Laws § 7–1.1–90.1 ("all ... rights of the petitioner as owner of the shares shall terminate" at the date of the election). WRC has paid her no dividends at least since June 1988. And, the record suggests that Mrs. Bogosian needs money for support now. The money paid on an interim basis will be subtracted from the ultimate sum owed her as a consequence of this suit. Given all these circumstances, we can find no abuse of the court's broad equity powers.

The orders of the district court are

*Affirmed.*

**906**

**7-1.1-90. Jurisdiction of court to liquidate assets and business of corporation.** — (a) The superior court shall have full power to liquidate the assets and business of a corporation:

(1) In an action by a shareholder when it is established that, whether or not the corporate business has been or could be operated at a profit, dissolution would be beneficial to the shareholders because

(A) The directors or such other persons as may be responsible for management pursuant to § 7-1.1-51(a) are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock; or

(B) The acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or

(C) The shareholders are deadlocked in voting power, and have failed, for a period which includes at least two (2) consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(D) The corporate assets are being misapplied or are in danger of being wasted or lost; or

(E) Two (2) or more factions of shareholders are divided and there is such internal dissension that serious harm to the business and affairs of the corporation is threatened; or

(F) The holders of one-half (½) or more of all the outstanding capital stock of the corporation shall have voted to dissolve the corporation

(2)(A) In an action by a creditor:

(i) When it is established that the corporation is insolvent; or

(ii) When it is established that the corporate assets are being misapplied or are in danger of being wasted or lost.

(B) If it is established that the claim of a creditor has been reduced to judgment and an execution thereon returned unsatisfied or that a corporation has admitted in writing that the claim of a creditor is due and owing, the establishment of such facts shall be prima facie evidence of insolvency.

(C) Every petition filed by a creditor for the liquidation of the assets and business of a corporation shall contain a statement as to whether such creditor is or is not an officer, director or shareholder of the corporation. Every petition for the liquidation of the assets and business of a corporation filed by an officer, director or shareholder of a corporation or by a creditor who is such an officer, director or shareholder, shall contain (to the best of petitioner's knowledge, information, and belief) the names and addresses of all known creditors of any class of the corporation.

(3) Upon application by a corporation which has filed a statement of intent to dissolve, as provided in this chapter, to have its liquidation continued under the supervision of the court. Such application shall contain (to the best of petitioner's knowledge, information, and

belief) the names and addresses of all known creditors of any class of the corporation.

(4) When an. action has been filed by the attorney-general to dissolve a corporation and it is established that liquidation of its business and· affairs should precede the entry of a decree of dissolution.

(b)· Proceedings under subdivisions (1), (2) or (3) of subsection (a) shall be brought in the county in which the registered office or the principal office of the corporation is situated.

(c) It shall not be necessary to make shareholders parties to any such action or proceeding unless relief is sought against them personally.

History of Section.
  G.L., § 7-1.1-90, as enacted by P.L. 1969. ch. 141, § 1.
  Reenactments. The 1985 Reenactment (P.L. 1985, ch. 150, § 1) added the subsection designations, in subsection (a) revised the subdivision and paragraph designations and substituted "chapter" for "act" in subdivision (3), and in subdivision (b) revised the statutory reference to reflect changes made by the Reenactment.

DECISIONS UNDER PRIOR LAW

1.  Equity.
  Creditor's petition representing corporation to be insolvent and asking appointment of receiver was a proceeding in equity. Jablouski v. Simons Land Co., 46 R.I. 277, 127 A. 3 (1924).

Collateral References. Dissension or deadlock of corporate directors and shareholders. 6 Am. Jur. P.O.F.2d, pp. 387-423.
  Dissolution of corporation on ground of intracorporate deadlock or dissension. 13 A.L.R.2d 1260; 83 A.L.R.3d 458.
  Fraud, mismanagement, or dissensions. inherent power of equity at instance of stockholder, to wind up solvent going concern. on ground of. 43 A.L.R. 288; 61 A.L.R. 1212. 91 A.L.R. 665.
  Oppressive conduct by majority of shareholders. directors. and those in control of corporation. 5 Am. Jur. P.O.F.2d, pp. 645-695.
  Power of equity to dissolve corporation on ground of intracorporate deadlock or dissension. 13 A.L.R.2d 1260
  Preferred stockholders' right to have receiver appointed. 50 A.L.R. 261.
  What amounts to "oppressive" conduct under statute authorizing dissolution of corporation at suit of minority stockholders. 56 A.L.R.3d 358.

**7-1.1-90.1.  Avoidance of dissolution by stock buyout. —** Whenever a petition for dissolution of a corporation is filed by one or more shareholders (hereinafter in this section referred to as the "petitioner") pursuant to either § 7-1.1-90 or a right to compel dissolution which is authorized under § 7-1.1-51 or is otherwise valid, the corporation or one or more of its other shareholders may avoid such dissolution by filing with the court prior to the commencement of the hearing, or, in the discretion of the court, at any time thereafter prior to a sale or other disposition of the assets of the corporation, an election to purchase the shares owned by the petitioner at a price equal to their fair value. If the shares are to be purchased by other

shareholders, notice shall be sent to all shareholders of the corporation other than the petitioner, giving them an opportunity to join in the election to purchase such shares. If the parties are unable to reach an agreement as to the fair value of such shares, the court shall, upon the giving of a bond or other security sufficient to assure to the petitioner payment of the value of such shares, stay the proceeding and determine the value of such shares, in accordance with the procedure set forth in § 7-1.1-74, as of the close of business on the day on which the petition for dissolution was filed. Upon determining the fair value of the stock, the court shall set forth in its order directing that the stock be purchased, the purchase price and the time within which the payment shall be made, and may decree such other terms and conditions of sale as it determines to be appropriate, including payment of the purchase price in installments extending over a period of time, and, if the shares are to be purchased by shareholders, the allocation of shares among shareholders electing to purchase them, which, so far as practicable, shall be proportional to the number of shares previously owned. The petitioner shall be entitled to interest on the purchase price of such shares from the date of the filing of the election to purchase such shares, and all other rights of the petitioner as owner of the shares shall terminate at such date. The costs of the proceeding, which shall include reasonable compensation and expenses of appraisers but not fees and expenses of counsel or of experts retained by a party, shall be allocated between or among the parties as the court shall determine. Upon full payment of the purchase price, under the terms and conditions specified by the court, or at such other time as may be ordered by the court, the petitioner shall transfer such shares to the purchaser.

**History of Section.**
G.L., § 7-1.1-90.1, as enacted by P.L. 1969. ch. 141, § 1.

**Collateral References.** Relief other than by dissolution in cases of intracorporate deadlock or dissension. 34 A.L.R.4th 13

### 7-1.1-91.    Procedure in liquidation of corporation by court.

— (a) In proceedings to liquidate the assets and business of a corporation the court shall have general equity jurisdiction and power to issue such orders, injunctions, and decrees as justice and equity may require, to appoint a receiver or receivers pendente lite, with such powers and duties as the court, from time to time, may direct, and to take such other proceedings as may be requisite to preserve the corporate assets wherever situated, and carry on the business of the corporation until a full hearing can be had.

(b) After a hearing had upon such notice as the court may direct to be given to all parties to the proceedings and to any other parties in interest designated by the court, the court may appoint a liquidating receiver or receivers with authority to take charge of any of such corporation's estate and effects of which he has been appointed receiver and to collect the assets of the corporation, includ-

ing all amounts owing to the corporation whether by shareholders on account of any unpaid portion of the consideration for the issuance of shares or otherwise.

(c) The hearing date for the appointment of a permanent receiver shall be not more than twenty-one (21) days after commencement of the action, unless such hearing date is extended by the court for good cause shown.

(d) Such liquidating receiver or receivers shall have authority subject to the order of the court, to sue and defend in all courts in his own name as receiver of such corporation, or in its name, to intervene in any action or proceeding relating to its assets or business, to compromise any dispute or controversy, to preserve the assets of such corporation, to carry on its business, to sell, convey and dispose of all or any part of the assets of the corporation wherever situated. either at public or private sale. to redeem any mortgages, security interests. pledges or liens of or upon any of its assets. and generally to do all other acts which might be done by such corporation or that may be necessary for the administration of his trust according to the course of equity. The assets of the corporation or the proceeds resulting from a sale, conveyance or other disposition thereof shall be applied to the expenses of such liquidation and to the payment of the liabilities and obligations of the corporation, and any remaining assets or proceeds shall be distributed under the direction of the court among its shareholders according to their respective rights and interests. The order appointing such receiver or receivers shall state their powers and duties. Such powers and duties may be increased or diminished at any time during the proceeding.

(e) The court shall have power to allow from time to time as expenses of the liquidation compensation to the receiver or receivers and to attorneys in the proceeding, and to direct the payment thereof out of the assets of the corporation or the proceeds of any sale or disposition of such assets.

(f) The court appointing such receiver shall have exclusive jurisdiction of the corporation and its property, wherever situated. and of all questions arising in the proceedings concerning the same.

**History of Section.**
G.L., § 7-1.1-91. as enacted by P.L. 1969. ch. 141, § 1.
**Reenactments.** The 1985 Reenactment (P.L. 1985, ch. 150, § 1) added the subsection designations.
**Cross References.** Bank receiverships, §§ 19-15-1 — 19-15-5.

Insurance company in receivership, reorganization plan, § 27-1-23
Jurisdiction to appoint receiver, § 7-1.1-97.1.
Trust company as receiver, § 19-5-6
**Rules of Court.** For rule relating to receiverships, see Superior Court Rules of Civil Procedure, Rule 66.