USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2220 IN RE ULPIANO UNANUE CASAL, Debtor, ________ GERARDO A. QUIROS LOPEZ, ET AL., Plaintiffs, Appellees, v. ULPIANO UNANUE CASAL, ET AL., Defendants, Appellees, ________ LILIANE UNANUE, EMPEROR EQUITIES, INC., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jos Antonio Fust , U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Andr s Guillemard-Noble, with whom Harvey B. Nachman and The Law ________________________ _________________ _______ Offices of Harvey B. Nachman were on brief for defendants, appellants. ____________________________ Arturo J. Garc a-Sol , with whom Dora M. Penagar cano, McConnell, _____________________ ____________________ __________ Vald s, Kelley, Sifre, Griggs & Ruiz-Suria were on brief for plain- ____________________________________________ tiffs, appellees. Carlos Lugo Fiol, Assistant Solicitor General, Department of _________________ Justice, with whom Reina Colon De Rodr guez, Acting Solicitor General, ________________________ was on brief for intervenor. ____________________ July 7, 1993 ____________________ CYR, Circuit Judge. Liliane Unanue ("Liliane") and CYR, Circuit Judge. _____________ Emperor Equities, Inc. ("Emperor") challenge the constitutional- ity of various provisional remedies imposed by a bankruptcy court pursuant to P.R. Laws Ann. tit. 32 App. III, R.56 et seq. We __ ____ lack jurisdiction over most of their claims, and find no merit in the others. I I BACKGROUND BACKGROUND __________ Ulpiano Unanue Casal ("Unanue"), a former chief execu- tive officer of Goya Foods ("Goya"), filed a voluntary chapter 7 petition in August 1990, scheduling liabilities totaling $1.1 million and assets of nominal value. Goya, a creditor, charged that Unanue was continuing to lead a life of luxury, traveling between seven "fabulously furnished" apartments which he had fraudulently transferred to Liliane, his wife, prior to bankrupt- cy. After extensive discovery, Goya moved for leave to commence an adversary proceeding, in the name and behalf of the chapter 7 estate, see 11 U.S.C. 503(b)(3)(B), against Liliane and E- ___ mperor, a shell corporation apparently controlled by Liliane. Although Liliane and Emperor were served with the Goya motion in July 1991, neither responded. On August 24, 1991, Goya learned that Emperor had sold one of Unanue's former condominium apartments some months earli- er, in May 1991, netting approximately $400,000. Goya promptly 3 renewed its motion for leave to commence adversary proceedings on behalf of the chapter 7 estate, and sought an immediate ex parte __ _____ order of attachment on the apartment-sale proceeds, alleging that the proceeds were assets of the chapter 7 estate and at risk of removal from the jurisdiction. On September 4, 1991, the bank- ruptcy court authorized Goya to commence an adversary proceeding, and issued an ex parte order of attachment under P.R. Rule 56 __ _____ ("September 4 order").1 On September 9, Goya provided appel- lants with copies of the summons, complaint, and motion for provisional remedies. In the course of executing the writ of attachment, it was discovered that Liliane had transferred most of the apart- ment-sale proceeds to a Swiss bank account. On September 12, 1991, alarmed by the apparent removal of the sale proceeds from the jurisdiction, Goya sought additional provisional remedies under Rule 56, including "cautionary notices" and a "prohibition against alienation" of Liliane's remaining properties in Puerto Rico, Paris, New York and Spain. After notice to Liliane and Emperor, and a hearing on appellants' constitutional claims, the bankruptcy court authorized the additional provisional remedies on September 26 ("September 26 orders"). ____________________ 1Federal Rule of Civil Procedure 64 is applicable in adver- sary proceedings. See Fed. R. Bankr. P. 7064. Thus, provisional ___ remedies are available in an adversary proceeding, see id. 7001 & ___ ___ 7064, "under the circumstances and in the manner provided by the law of the state in which the district court is held," Fed. R. Civ. P. 64. 4 The September 4 and September 26 orders were appealed to the district court on the ground that the provisional remedies imposed by the bankruptcy court were unconstitutional under Connecticut v. Doehr, 111 S. Ct. 2105 (1991). The Commonwealth ___________ _____ of Puerto Rico intervened. See 28 U.S.C. 2403(b). The dis- ___ trict court upheld the challenged provisional remedies, see In re ___ _____ Unanue Casal, 144 B.R. 604 (D.P.R. 1992), and the present appeal _____________ followed. II II THE SEPTEMBER 4 ORDER THE SEPTEMBER 4 ORDER _____________________ Although the parties have not done so, we inquire into our jurisdiction to entertain the interlocutory appeal of the ex __ parte order entered on September 4. See In re Spillane, 884 F.2d _____ ___ ______________ 642, 644 (1st Cir. 1989); In re Recticel Foam Corp., 859 F.2d ___________________________ 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire sua sponte into its subject matter jurisdiction"). The courts of ___ ______ appeals may derive jurisdiction to review a district court appellate order in a bankruptcy case from either of two statutory sources: (1) the bankruptcy appeal provisions of 28 U.S.C. 158(d); or (2) the interlocutory appeal provisions in 28 U.S.C. 1292 applicable to civil actions generally. See Connecticut ___ ___________ Nat'l Bank v. Germain, 112 S. Ct. 1146 (1992).2 We trace these __________ _______ avenues of appeal in turn. ____________________ 2Germain rejected the widely held view that 28 U.S.C. _______ 158(d) affords the only avenue of appeal from a district court appellate order in a bankruptcy case. Compare, e.g., In re GSF _______ ____ _________ Corp., 938 F.2d 1467, 1473 n.4 (1st Cir. 1991). _____ 5 6 A. Section 158(d) A. Section 158(d) ______________ Section 158(d) affords a right of appeal to the courts of appeals from all "final decisions, judgments, orders [or] _____ decrees" entered by district courts in bankruptcy cases. See 28 ___ U.S.C. 158(d) (emphasis added). It is often difficult to determine what constitutes a "final" judgment or order under section 158(d). There is somewhat less difficulty in doing so in an adversary proceeding, however, as the finality determination in such proceedings "closely resembles [that] in 'an ordinary case [between the parties] in a district court.'" In re Har- ___________ rington, No. 92-2212 (1st Cir. Apr. 26, 1993), slip op. at 4 n.3 _______ (quoting In re Public Serv. Co., 898 F.2d 1, 2 (1st Cir. 1990)). ______________________ Accordingly, a district court order in an adversary proceeding is not appealable as of right under section 158(d) unless it ends the entire adversary proceeding "on the merits and leaves nothing for the court to do but enter the judgment." See Stringfellow v. ___ ____________ Concerned Neighbors in Action, 480 U.S. 370, 375 (1987) (quoting ______________________________ Catlin v. United States, 324 U.S. 229, 233 (1945)). ______ _____________ Even though a somewhat loosened standard of finality obtains in bankruptcy appeals, on a showing of "special justifi- cation," see Harrington, supra, at 3, 4 n.3, the exceptions are ___ __________ _____ narrowly limited in order to avoid piecemeal review. Neverthe- less, as in an ordinary civil action, the "collateral order" doctrine established in Cohen v. Beneficial Industrial Loan Corp, _____ _______________________________ 337 U.S. 541 (1949), is applicable to an appeal from an inter- locutory order entered in an adversary proceeding, see In re ___ _____ 7 Martin, 817 F.2d 175, 178 (1st Cir. 1987), where the non-final ______ order is, inter alia, "effectively unreviewable on appeal from a _____ ____ final judgment," see In re Newport Sav. & Loan Assn., 928 F.2d ___ _________________________________ 472, 474 (1st Cir. 1991) (quoting Van Cauwenberghe v. Biard, 486 ________________ _____ U.S. 517 (1988)). On this reasoning, we must decline review of the September 4 order, as "non-final" under section 158(d). We adhere to our earlier holding that an interlocutory order allow- ing an attachment to remain in place is not an appealable "col- lateral order," since "'the rights of all parties can be ade- quately protected while the litigation on the main claim pro- ceeds.'" Lowell Fruit Co. v. Alexander's Market, Inc., 842 F.2d ________________ ________________________ 567, 569 (1st Cir. 1988) (per curiam) (quoting Swift & Co. _____________ Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, _______ _____________________________________ 689 (1950)); the district court provided adequate protection of appellants' rights in the present case by conditioning its September 4 attachment order on Goya's posting of a $50,000 surety bond, and there is no indication that appellants' property is at further significant risk or peril. Moreover, the validity of the September 4 attachments remains subject to challenge on eventual appeal from a final judgment, even if the claimant prevails. See Lowell Fruit, 842 F.2d at 570 (citing Drys Ship- ___ _____________ __________ ping Corp. v. Freights, Sub-Freights, Charter Hire, 558 F.2d ___________ ______________________________________ 1050, 1052 (2d Cir. 1977)). In the meantime, appellants can secure release of the attached property by posting a surety bond of their own, see P.R. Rule 56.3, its cost presumably recoverable ___ 8 from the claimant in the event the defendant prevails on the underlying claim. Cf. Lowell Fruit, 842 F.2d at 570 (Massachu- ___ ____________ setts law). Given these procedural and remedial safeguards, the present case clearly falls within the rule in Lowell Fruit: ____________ "'[a]lthough the imposition of provisional remedies may impose a hardship an unjust hardship if the imposition is improper the hardship is not so substantial as to justify wasting judicial resources through piecemeal appeal.'" Id. at 569 (quoting ___ Trustees of HMG v. Compania Aseguradora Inter-Americana S.A. ________________ ___________________________________________ Panama, 672 F.2d 250, 251 (1st Cir. 1982) (per curiam)). ______ B. Section 1292 B. Section 1292 ____________ We also lack jurisdiction over the September 4 order under 28 U.S.C. 1292(a)(1), which permits interlocutory appeals of district court orders "granting, continuing, modifying, refusing or dissolving injunctions." Traditionally, section 1292(a)(1) has been construed narrowly, in light of its language and its potential for eroding the "finality" doctrine. See, ___ e.g., Carson v. American Brands, Inc., 450 U.S. 79, 84 (1981); ____ ______ ______________________ Kartell v. Blue Shield of Massachusetts, Inc., 687 F.2d 543, 551 _______ __________________________________ (1st Cir. 1982); see also Sierra Club v. Marsh, 907 F.2d 210, 214 ___ ____ ___________ _____ (1st Cir. 1990) ("we are unwilling to adopt a more expansive reading of section 1292(a)(1) than is logically required"); see ___ generally 16 Charles A. Wright et al., Federal Practice and _________ __ ___ _____________________ Procedure (1977 & 1992 supp.) [hereinafter: Wright & Miller] at _________ _______________ 3921 n.10. Thus, "[f]or historical reasons, court-ordered 'attachments,' even where coercive and designed to protect 9 ultimate relief, are typically considered to be 'legal,' not 'equitable' in nature, and therefore are not 'injunctions' for 1292(a)(1) purposes." Bogosian v. Woloohojian Realty Corp., ________ _________________________ 923 F.2d 898, 901 (1st Cir. 1991); see also Wright & Miller ___ ____ ________________ 3922 n.46. Moreover, where the challenged order is not ex- pressly captioned as an injunction, see Feinstein v. Space ___ _________ _____ Ventures, Inc., 989 F.2d 49 (1st Cir. 1993), "a litigant [must] ______________ show that an interlocutory order of the district court might have a 'serious, perhaps irreparable consequence,' and that the order can be 'effectually challenged' only by immediate appeal." Carson, 450 U.S. at 84 (quoting Baltimore Contractors, Inc. v. ______ ____________________________ Bodinger, 384 U.S. 176, 181 (1955)); see also Kartell, 687 F.2d ________ ___ ____ _______ at 551; Bogosian, 923 F.2d at 901 (noting "serious consequences" ________ necessary for appealability). In the present case, the September 4 order, captioned as an "attachment," possesses all essential characteristics of an "attachment" under Puerto Rico law: it is directed to the U.S. Marshal, rather than appellants, and its execution subjects the attached property to the jurisdiction of the court. We conclude that the September 4 order comes within the "attachments" excep- tion to appealability under section 1292(a)(1). See Bogosian, ___ ________ 923 F.2d at 901. Moreover, even were we to treat the September 4 order as an "injunction" under section 1291(a)(1), appellants have not shown that the order is insusceptible of effective vindication following final judgment, see Lowell Fruit, 842 F.2d ___ ____________ at 569-70, and therefore have not made the showing of "serious, 10 perhaps irreparable consequences" required for interlocutory review. See Carson, supra; see also Navarro-Ayala v. Hernandez- ___ ______ _____ ___ ____ _____________ __________ Colon, 956 F.2d 348, 350 (1st Cir. 1992) ("Even if we assume the _____ dubious proposition that [the challenged] order . . . could be considered an injunction, for an injunction to be immediately appealable it must have a 'serious, perhaps irreparable conse- quence'") (citation omitted); Chronicle Pub. Co. v. Hantzis, 902 ___________________ _______ F.2d 1028, 1031 (1st Cir. 1990) ("[e]ven were the [challenged] order to be deemed an injunction under 1292(a)(1), interlocuto- ry review would be permissible only upon a showing that the order will have a 'serious, perhaps irreparable consequence,' and that the order can be 'effectually challenged' only by immediate appeal") (citation omitted). C. Section 1292(b) C. Section 1292(b) _______________ Finally, appellants' challenge to the September 4 order presents no occasion for interlocutory review under 28 U.S.C. 1292(b), which permits the courts of appeals to entertain an interlocutory appeal on a district court's certification "that [the challenged] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The dis- trict court did not purport to certify the September 4 order for 11 immediate appeal,3 and, in any case, a court of appeals may not exercise its discretion to entertain an interlocutory appeal under section 1292(b) unless the appellant requests it to do so within ten days after entry of the district court order from ___ ____ which appeal is sought. No such timely request was made by appellants. "[T]he statute's ten-day limit is jurisdictional, which is to say that the law does not permit us to forgive a party's failure to comply." Rodriguez v. Banco Central, 917 F.2d _________ _____________ 664, 668 (1st Cir. 1990). III III THE SEPTEMBER 26 ORDERS THE SEPTEMBER 26 ORDERS _______________________ The September 26 orders, authorizing the filing of "cautionary notices" against appellants' real properties, and prohibiting their alienation by appellants, present a somewhat closer question. On the one hand, the "cautionary notice," a creature of Puerto Rico law, is roughly analogous to the Anglo- ____________________ 3The district court opinion stated: "should the bankruptcy court's orders be deemed interlocutory, we would have granted _____ ____ leave to appeal these orders because of the important constitu- tional issues they raise." 144 B.R. at 608, n.4 (emphasis added). The quoted statement appears in a footnote discussion of the district court's interlocutory appellate jurisdiction under ________ _______ 28 U.S.C. 158(a). See also 28 U.S.C. 157. In relevant part, ___ ____ 158(a) states: "The district courts . . . shall have jurisdic- tion . . ., with leave of the [district] court, from interlocuto- ry orders and decrees[] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Thus, in context, the district court's footnote did not purport to be a 1292(b) certification, nor did it certify that "an immediate appeal [to the court of appeals] may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. 1292(b). 12 American notice of lis pendens, see Cruz La Corte v. Mojica ___ _______ ___ ______________ ______ Sandoz, 109 D.P.R. 354 (1980); see also Correa Sanchez v. Regis- ______ ___ ____ ______________ ______ trar, 113 D.P.R. 581, 13 O.T. 750, 760 (1982) ("cautionary ____ notice" is recorded in Registry of Property for primary purpose of subjecting property to the remedy obtained in a pending legal proceeding). Orders imposing lis pendens have been viewed as ___ _______ "attachments" for section 1292(a) purposes. See Rosenfeldt v. ___ __________ Comprehensive Acctg. Serv. Corp., 514 F.2d 607, 609 n.2 (7th Cir. ________________________________ 1975) (Stevens, J.); but cf. Beefy King Int'l, Inc. v. Veigle, ___ ___ _______________________ ______ 464 F.2d 1102, 1104 (5th Cir. 1972) (per curiam) (holding lis ___ pendens analogous to injunction under Florida law). On the other _______ hand, a "prohibition against alienation" seems closely akin to an injunction; it is directed to appellants personally, enforceable by contempt, and "'designed to accord or protect, some or all of the substantive relief sought' in the action." Bogosian, 923 ________ F.2d at 901 (quoting 16 Wright & Miller 3922 at 10, 26). The _______________ fact that the September 26 orders are not captioned as injunc- tions, and that the district court and the parties consistently treated them as attachments, is relevant but not dispositive of their appealability under section 1292(a)(1). See Manchester ___ __________ Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied _______________________ _____________________________________ Industries Fund, 967 F.2d 688, 690 (1st Cir. 1992) ("we consider ________________ the substantial effect of the order . . . in deciding whether an ___________ ______ appeal is available" under 1292(a)(1)) (emphasis added); cf. ___ Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47 (1st Cir. 1986) ______________ ____________ (where an order has attributes of both an attachment and an 13 injunction, treatment by district court and parties is "factor to be considered" for purposes of appealability). And it is at least conceivable, notwithstanding the $1 million surety bond posted by Goya, that appellants might be able to assert "serious, perhaps irreparable" consequences from the prohibition on aliena- tion of properties having a stated value approximating $7 mil- lion. We need not delve into the matter, however, as appel- lants' constitutional challenge to the September 26 orders would fail on the merits even if appealable under section 1292(a)(1). See Norton v. Mathews, 427 U.S. 524, 532 (1976) (where party ___ ______ _______ requesting dismissal based on lack of jurisdiction clearly would prevail on the merits, court may bypass close jurisdictional question). Appellants' constitutional challenge is based on Connecticut v. Doehr, 111 S. Ct. 2105, which held that, absent ___________ _____ exigent circumstances, "[a] plaintiff's interest in attaching . . . property does not justify the burdening of [a defendant's] ownership rights without a hearing to determine the likelihood of recovery." Id. at 2115. Here, however, appellants were given ___ notice and a hearing prior to the issuance of the September 26 orders. At the hearing, Goya demonstrated a reasonable "likeli- hood of recovery," based on (1) the dates of appellants' purchase of the various properties; (2) sudden changes in the debtor's cash position around the times of these purchases; (3) appel- lants' repeated refusals to identify other sources of funding for their acquisition of these properties; (4) appellants' apparent 14 attempt to remove assets from the jurisdiction at about the time Goya commenced its investigation into the debtor's connection with those assets; and (5) the debtor's apparent past involvement in appellants' financial affairs. Appellants, for their part, presented little or no rebuttal evidence, preferring to reserve their right to present their case at trial. Doehr does not _____ require a trial on the merits prior to the issuance of a provi- sional remedy. Appellants were afforded due process before the September 26 orders issued. See id. We therefore reserve for ___ ___ another day the question whether a "cautionary notice," linked with a "prohibition against alienation" of real property, is appealable as an injunction under 28 U.S.C. 1292(a)(1). IV IV CONCLUSION CONCLUSION __________ The appeal of the September 4 order of attachment is dismissed for lack of jurisdiction, without prejudice to appel- lants' right to renew their constitutional challenge upon the conclusion of the pending adversary proceeding. The due process challenge to the September 26 orders imposing "cautionary notic- es" and a "prohibition against alienation" of appellants' proper- ties is denied on the merits. Dismissed, in part, for lack of jurisdiction; affirmed, _______________________________________________________ in part, on the merits. Costs to appellees and intervenor. __________________________________________________________ 15