**In the Matter of Ulpiano UNANUE–CASAL, a/k/a Charles Unanue, Debtor.**

**Gerardo A. QUIRÓS–LÓPEZ, Chapter 7 Trustee, Goya Foods, Inc., Goya de Puerto Rico, Inc., Plaintiffs–Appellees,**

**v.**

**Ulpiano UNANUE–CASAL, Liliane Unanue, Emperor Equities, Inc., and Kalif Trading, Inc., Defendants–Appellants.**

**Civ. No. 91–2337 (JAF).**
**Bankruptcy No. 90–04490 (SEK).**

United States District Court,
D. Puerto Rico.

Aug. 7, 1992.

---

**4.** See Memorandum of United States of America, filed June 3, 1992 (Ct. Doc. No. 613), pp. 16–17.

Arturo J. Garcia–Sola and Dora M. Pena-garicano, McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, San Juan, P.R., for Goya Foods, Inc. & Goya de Puerto Rico, Inc.

Antonio Hernandez–Rodriguez, William Vidal–Carvajal, Hernandez & Vidal, San Juan, P.R., for Charles Unanue.

Harvey B. Nachman, Nachman & Fernandez–Sein, San Juan, P.R., for Liliane Unanue & Emperor Equities, Inc.

Viviana Rodriguez, Atty., Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, P.R., for intervenor, Com. of Puerto Rico.

## OPINION AND ORDER

FUSTE, District Judge.

In this appeal from orders of the United States Bankruptcy Court for the District of Puerto Rico, appellants Liliane Unanue and Emperor Equities, Inc. ("Emperor") make a facial and as-applied challenge to the constitutionality of the Puerto Rico provisional remedies statute, 32 L.P.R.A.App. III R. 56. Finding no constitutional infirmity in the statute, we affirm the bankruptcy court's rulings.

## I.

### Background

On August 29, 1990, Ulpiano Unanue–Casal, a/k/a Charles Unanue ("Charles Unanue" or "debtor"), filed a petition under Chapter 7 of the Bankruptcy Code. In his schedule of liabilities and assets, he listed a little over $40,000 in assets, while listing liabilities in the amount of over $1,100,000. Gerardo A. Quirós–López was appointed Chapter 7 Trustee.

On August 30, 1991, Goya Foods, Inc. and Goya de Puerto Rico, Inc. ("Goya"), as creditors in the bankruptcy proceeding and on behalf of the trustee, commenced an adversary proceeding seeking to set aside allegedly fraudulent transfers made by the debtor. Along with Unanue, named as defendants were his wife Liliane Unanue, Emperor Equities, Inc. ("Emperor"), and Kalif Trading, Inc. ("Kalif"). Emperor is a Delaware corporation whose sole shareholder is Liliane Unanue. Kalif is a Panamanian corporation in which Charles and Liliane Unanue had sole signature authority over the corporation's accounts. The complaint in the adversary proceeding alleged that, since 1980, Charles Unanue has been fraudulently transferring his assets to his wife, Kalif, and Emperor. Among the assets allegedly transferred were cash, securities, and a condominium apartment at San Gerónimo Condominium in San Juan, Puerto Rico. Plaintiffs sought an order declaring the transfers null and void and restoring the assets to the debtor's estate.

On the same day the complaint in the adversary proceeding was filed, plaintiffs moved for provisional remedies under Fed. R.Bankr.P. 7064, Fed.R.Civ.P. 64, and Rule 56 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A.App. III R. 56. On September 4, 1991, the bankruptcy court entered an *ex parte* order of attachment on the proceeds of the sale of Apartment 5–D, San Gerónimo Condominium, an apartment held in Emperor's name until its sale in the spring of 1991. The order called for at-

tachment of $400,000 of Emperor's assets, representing the amount of the sale. However, execution of the attachment realized a total of only $950, the balance having been transferred by Liliane Unanue to a bank account in her name in Zurich, Switzerland. The first provisional remedy was granted subject to plaintiffs' posting a $50,-000 bond.

Thereafter, on September 12, 1991, Goya moved for additional provisional remedies. Plaintiffs sought, *inter alia*, cautionary notices and orders prohibiting the alienation of the following properties: Apartment 11B at the San Gerónimo Condominium; Apartment 5A of the same complex; two apartments located in New York City; and properties in La Solana del Rio, Fuengirola, Málaga, Spain and Paris, France. On the same day, the bankruptcy court entered an order to show cause why the requested provisional remedies should be entered *ex parte*, without notice and a hearing, as well as whether the court had jurisdiction over the properties located outside Puerto Rico. After receiving plaintiffs' response, the court entered an order on September 20, 1991, vacating an earlier order setting pretrial conferences in both this action and an earlier-filed adversary proceeding[1] and setting a status conference for September 24, 1991, at which, *inter alia*, the motion for provisional remedies would be discussed. The court ordered that all parties be notified "by the quickest means available to the Clerk's Office for such notice."

On September 24, 1991, at the hearing, Goya's provisional remedy motion was discussed. The court heard argument from all of the parties, including appellants, who had retained counsel. Two days later, the court granted Goya's motion for provisional remedies in a series of rulings ordering the filing of cautionary notices on the prop-

erties and the prohibition of their transfer or alienation pending the outcome of the adversary action. These orders were entered subject to plaintiffs posting a $1,000,-000 bond. It is from these bankruptcy court orders, as well as the initial order attaching the proceeds of the condominium sale, that Liliane Unanue and Emperor appeal.[2]

## II.

### District Court Jurisdiction

■ While not raised by the parties, we must first determine whether this court has jurisdiction over the appeal of the bankruptcy court's orders. The First Circuit has found that a trial court's order refusing to dissolve the grant of a pre-judgment, provisional remedy is not an appealable order under the collateral order doctrine enunciated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Lowell Fruit Co. v. Alexander's Market, Inc.*, 842 F.2d 567, 568–70 (1st Cir.1988) (per curiam) (writ of attachment); *Sobol v. Heckler Congressional Committee*, 709 F.2d 129, 130–32 (1st Cir.1983) (per curiam) (same); *Trustees of Hospital Mortg. Group v. Compañia Aseguradora Interamericana S.A. Panama*, 672 F.2d 250, 251 (1st Cir. 1982) (per curiam) (posting of a bond). In *Lowell Fruit Co.*, like the appeal before us, appellants challenged a pre-judgment attachment order on due process grounds. The court found that, notwithstanding the hardship imposed upon appellant because of a potentially erroneous grant of a provisional remedy, this fact did not, in and of itself, make the order appealable.

This court's appellate jurisdiction is based on 28 U.S.C. § 158(a).[3] Under sec-

---

**1.** At the September 24, 1991 hearing, the court consolidated the two adversary proceedings.

**2.** Pursuant to 28 U.S.C. § 2403(b) and Fed. R.Civ.P. 24, this court granted the Commonwealth of Puerto Rico's motion to intervene, since appellants are contesting the constitutionality of a local rule of procedure. The Department of Justice for the Commonwealth filed a brief in support of the constitutionality of Rule 56.

**3.** Section 158(a) of Title 28 provides:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy under section 157 of this title. An appeal under this subsection shall be taken

tion 158(a), this court can hear appeals of both final judgments, orders and decrees of the bankruptcy court and also, with leave of the court, from interlocutory orders and decrees. The First Circuit has discussed the concept of "finality" in the context of bankruptcy proceedings.

> Finality is viewed more flexibly in the bankruptcy context than it is in other civil litigation contexts. *In re Comer,* 716 F.2d 168, 171 (3d Cir.1983). A bankruptcy order need not dispose of all aspects of a case to be final; an order which disposes of a "discrete dispute within the larger case" will be considered final and appealable. *In re Saco Local Development Corp.,* 711 F.2d 441, 444 (1st Cir.1983). The order in question must, however, "conclusively determine" the dispute. *Id.* at 445–46.

*In re American Colonial Broadcasting Corp.,* 758 F.2d 794, 801 (1st Cir.1985). *See also Tringali v. Hathaway Machinery Company,* 796 F.2d 553, 557–58 (1st Cir. 1986).

Here, we think that the bankruptcy court's orders granting provisional remedies are "final" in the sense that they dispose of a particular dispute within the larger bankruptcy proceeding. While the merits of the adversary proceedings are still to be determined, the bankruptcy court's orders *did conclusively determine* the applicability of the Puerto Rico provisional remedies rule to the facts of the case. Implicit in the court's decision is that the Puerto Rico provision authorizing the grant of provisional remedies is constitutional. We, therefore, find that appellants' appeal is properly before us.[4]

### III.

#### Standard of Review

In an appeal from a decision of the bankruptcy court, Fed.R.Bankr.P. 8013 provides the district court's standard of review. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous," while conclusions of law are afforded *de novo* review. *In re 604 Columbus Ave. Realty Trust,* 968 F.2d 1332, 1341 (1st Cir.1992); *In re G.S.F. Corp.,* 938 F.2d 1467, 1474 (1st Cir.1991); *Briden v. Foley,* 776 F.2d 379, 381 (1st Cir.1985). Here, because appellants challenge the constitutionality of a rule of procedure enacted by the Legislature of Puerto Rico, our review is *de novo.*

### IV.

#### Due Process Claim

#### A. Puerto Rico Provisional Remedies Statute

Rule 56 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A.App. III. R. 56, provides for the various provisional remedies available under Puerto Rico law. Rule 56.1 sets forth the general principles underlying the grant of provisional remedies.

> In every action, before or after entering judgment, and on motion of claimant, the court may issue any provisional order it may deem necessary to secure satisfaction of the judgment. The court may order the attachment, garnishment, the prohibition to alienate, claim and delivery of personal property, receivership, an order to do or to desist from doing any specific act, or it may order any other measure it deems necessary, according to the circumstances of the case. In every case in which a provisional remedy is sought, *the court shall consider the interests of all the parties and shall adjudicate as substantial justice may require.*

32 L.P.R.A.App. III. R. 56.1. (emphasis added). In *F.D. Rich Co. v. Superior Court,* 99 P.R.R. 155, 173 (1970), the Supreme Court of Puerto Rico construed the predecessor statute to Rule 56.1 in an expansive manner, allowing the trial court "sufficient flexibility to issue the measures

---

only to the district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158(a).

**4.** In the alternative, notwithstanding the fact that appellants failed to seek leave of the court, should the bankruptcy court's orders be deemed interlocutory, we would have granted leave to appeal these orders because of the important constitutional issues they raise.

which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of judgments," subject only to the limitation that the measure used is "reasonable and adequate to the essential purpose of the same." *See also HMG Property Investors, Inc. v. Parque Industrial Rio Cañas, Inc.*, 847 F.2d 908, 913–14 (1st Cir.1988).

The rest of Rule 56 details the requirements and procedures which must be followed in order to obtain the various provisional remedies listed in Rule 56.1. Rule 56.2 mandates notice and a hearing prior to the grant of any provisional remedy, except as provided for in Rules 56.4 and 56.5. Rule 56.3 enumerates the circumstances where a provisional remedy may be granted absent the posting of a bond.[5] In all other cases, a bond sufficient "to secure all the damages arising from the remedy" must be posted. A defendant seeking to retain possession of an attached property may do so by filing a bond deemed sufficient by the court to secure the value of the property.

Rule 56.4, one of the two rules challenged by appellants, provides in relevant part:

> If the requirements of Rule 56.3 have been met, the court shall issue, on motion ex parte of a claimant, an order of attachment or of prohibition to alienate. The attachment and prohibition to alienate real property shall be effected by

recording them with the Registry of Property and notifying the defendant. In case of personal property, the order shall be carried out by depositing the personal property in question in court or with the person designated by it under the claimant's responsibility....

32 L.P.R.A.App. III R. 56.4.

Rule 56.7, the second challenged statute, provides the procedure for filing a notice of lis pendens in an action where the title or the right of possession is called into question.[6] However, with respect to this rule, in *Rocafort v. Alvarez*, 112 D.P.R. 563 (Official Translations at 706) (1982), the Supreme Court of Puerto Rico ruled that the procedures for filing a cautionary notice under Articles 112 and 113 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §§ 2401, 2402, and not the procedure outlined in the first paragraph of Rule 56.7, constituted the only method for recording notice of a pending judicial action in the Registry of Property. *See also Pérez–Mercado v. Martínez–Rondón*, 92 J.T.S. 32 at 9330, 9334 (1992) (both the attachment procedure under Rule 56.4 and the notice of lis pendens under Rule 56.7 converge at a common point: Article 112 of the Mortgage Law); *E.R. Foods, Inc. v. Lee Optical*, 117 D.P.R. 566 (Official Translations at 675, 679) (1986) (the presentation of lis pendens after *Rocafort* has no recordable effect). In *E.R. Foods, Inc.*, the court confirmed that the Mortgage Law, read in conjunction with the second paragraph of Rule 56.7,

---

**5.** The three exceptions listed in Rule 56.3 where a bond may not be required are (1) where it appears from a public or private document that there is a legally-enforceable obligation; (2) where a party is indigent and expressly exempted from filing fees and, after a hearing, the court finds both that the complaining party has a meritorious claim and that failure to grant the provisional remedy would render any resulting judgment academic since there would be no property upon which to execute; and (3) where the remedy is sought after judgment. 32 L.P.R.A.App. III R. 56.3(1)–(3).

**6.** Rule 56.7 provides:

In an action affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterwards, may, after serving

notice upon the affected adverse party, record in the Registry of Property in the district in which the property, or part thereof, is situated, a notice of the pendency of the action or defense, and a description of the property affected thereby. Only from the time of filing such notice for record shall the purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice thereof.

A hearing having been held and a bond for a reasonable amount having been furnished, the court wherein the action is pending shall be empowered to order that the notice of pendency of action be expunged, taking into consideration the possibility that the moving party may prevail, the value of the property or right involved, and the other circumstances of the case.

32 L.P.R.A.App. III R. 56.7.

would be the only means of recording a cautionary notice of complaint. Off. Trans. at 680. Although appellants argue that Rule 56.7 is unconstitutional, Goya moved the bankruptcy court for cautionary notices pursuant to Articles 112 and 113 of the Mortgage Law. It is therefore not clear to us whether appellants are also challenging the procedures mandated in the Mortgage Law for filing a cautionary notice or are basing their appeal solely on the court's authority to order this provisional remedy under Rule 56.1. To the extent that we find that Rule 56 does not offend the Due Process clause, we need not reach the issue of whether the procedures outlined in Articles 112 and 113 of the Mortgage Law to actually record the cautionary notices— read in conjunction with the second paragraph of Rule 56.7—suffer from any constitutional infirmity.

### B. *What Process is Due?*

In determining whether a statute involving a property interest violates a party's due process right, the United States Supreme Court has established a two-part analysis. First, it must be determined "whether the statute authorizes the taking of a "significant property interest" protected by the fifth [and fourteenth] amendment." *Reardon v. United States,* 947 F.2d 1509, 1517 (1st Cir.1991) (*en banc*) (citing *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)). Where no significant property interest is involved, the due process inquiry ends. If a significant property interest is found, the inquiry proceeds "to examine what process is due in the particular circumstances." *Reardon,* 947 F.2d at 1517–18.

In *Connecticut v. Doehr,* —— U.S. ——, ——–——, 111 S.Ct. 2105, 2111–12, 115 L.Ed.2d 1 (1991), the Supreme Court "return[ed] to the question of what process must be afforded by a state statute enabling an individual to enlist the aid of the State to deprive another of his or her property by means of the prejudgment attachment or similar procedure." *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (striking down state statute allowing prejudgment

garnishment of wages without notice and prior hearing); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (state replevin provisions permitting vendors to seize goods through *ex parte* application to court clerk and posting of a bond found violative of due process); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (state *ex parte* sequestration procedure upheld; *Fuentes* distinguished); *Northern Georgia Finishing Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (state *ex parte* garnishment statute invalidated which failed to provide for notice, prior hearing, bond, a detailed affidavit setting out claim, determination by a neutral magistrate or a prompt postdeprivation hearing). The Court in *Doehr* first found that the property interests affected by prejudgment remedies such as attachment are significant.

> For a property owner like Doehr, attachment ordinarily clouds title, impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage; and can even place an existing mortgage in technical default where there is an insecurity clause.

*Doehr,* —— U.S. at ——, 111 S.Ct. at 2113; *Reardon,* 947 F.2d at 1518. The Court therefore found that such prejudgment remedies as attachment "are subject to the strictures of due process." *Doehr, Id.* (quoting *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988)).

■ Like the attachment statute in *Doehr,* the provisional remedies authorized under Rule 56 amount to the deprivation of a "significant property interest." Title is clouded. Defendants are prohibited from alienating, assigning, transferring or otherwise encumbering the properties which are the subject of the order. In sum, we find that Rule 56 authorizes the taking of a "significant property interest" within the meaning of the Due Process clause. We, therefore, turn to the second part of the analysis to determine what process is due.

In *Doehr,* the Court, relying on the analysis developed in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set forth the proper threefold inquiry to be used to determine whether a state prejudgment remedy statute comports with the mandates of due process.

For this type of case, therefore, the relevant inquiry requires, as in *Mathews,* first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews,* principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr,* —— U.S. at ——, 111 S.Ct. at 2112. We now apply this three-part test to both the bankruptcy court's September 4, 1991 *ex parte* attachment order and the September 26, 1991 orders entered after the hearing.

#### (1) The Affected Private Interest

■ The September 4, 1991 order attached the proceeds of the sale of the condominium. Had the great majority of the funds not been previously transferred outside the United States prior to the commencement of the adversary proceeding, the court's order would have deprived Liliane Unanue and/or Emperor of the possession and use of the funds during the pendency of the adversary proceeding. With respect to the September 26, 1991 rulings prohibiting alienation of the properties and ordering the filing of cautionary notices in the property registries, these orders affected appellants' property interest in the same way as did the Connecticut attachment statute in *Doehr* or the federal lien provision in *Reardon.* As such, it is clear that appellants' interests are significantly affected by the prejudgment remedies ordered in this case.

#### (2) The Risk of Erroneous Deprivation and the Value of Additional Safeguards

The September 4, 1991 attachment order was granted *ex parte* and without notice or a hearing. The September 26, 1991 orders were granted after notice and a hearing. In both cases, Goya was required to post a bond prior to the court's grant of the remedies. Because two different procedures were involved with respect to each of the orders, we examine the September 4, 1991 and September 26, 1991 orders *seriatim.*

■ (a) *September 4, 1991 Order.* Goya moved for the order of attachment on the proceeds of the sale of the condominium apartment at the same time it commenced the fraudulent transfer adversary proceeding. This proceeding, in turn, is part of the ongoing Chapter 7 bankruptcy proceeding which had been pending in the bankruptcy court for one year prior to the filing of the adversary proceeding. Given the circumstances of this case, we find that the procedures provided by Rule 56 "effect[ ] a constitutional accommodation of the conflicting interests of the parties." *Mitchell,* 416 U.S. at 607, 94 S.Ct. at 1900.

■ As the Court in *Doehr* opined, "[b]y definition, attachment statutes premise a deprivation of property on one ultimate factual contingency—the award of damages to the plaintiff which the defendant may not be able to satisfy." —— U.S. at ——, 111 S.Ct. at 2113. In the case of a fraudulent transfer proceeding, the ultimate issue— the ownership of assets and the circumstances surrounding their transfers—normally can be established through the use of documentary proof. *See Mitchell,* 416 U.S. at 609, 94 S.Ct. at 1901; *Reardon,* 947 F.2d at 1519. This use of documentary evidence results in minimizing the risk that a prejudgment attachment order would be erroneously entered. *Reardon, Id.* Here, the bankruptcy court had before it various documents detailing the financial transactions involving Charles and Liliane Unanue, Emperor and Kalif. It also had transcripts of bankruptcy Rule 2004 examinations where the Unanues refused to answer questions

regarding the origin, ownership and transfer of assets. These facts demonstrate that the nature of the proof in this type of case would allow the bankruptcy judge to both weigh the likelihood of plaintiffs' success on the merits and the necessity of provisional remedies in order to insure the effectiveness of the judgment.

■ The procedural safeguards provided by Rule 56 also protect against the erroneous filing of an attachment order. Under Rule 56.3 a bond sufficient to secure whatever damages which may arise from the property's erroneous attachment must be filed prior to the order being granted. The factors which must be weighed in setting the amount of the bond are: "the usefulness of the property to be attached for the defendant; how solid are the grounds that prima facie support the plaintiff's claim; and if the security requested is the least onerous that may guarantee the effectiveness of the judgment which may be rendered." *Soc. de Gananciales v. Rodriguez*, 116 D.P.R. 468 (Official Translations at 572, 576) (1985) (quoting *Vda. de Galindo v. Cano*, 108 D.P.R. 277 (Official Translations at 283, 286–87) (1979)). Also, a postdeprivation hearing is available to an aggrieved party. Like the Louisiana sequestration statute upheld in *Mitchell*, we find that the need to prevent assets from being removed from the jurisdiction of the bankruptcy court during the pendency of a proceeding justifies resort to provisional remedies. Further, the nature of the proof, the posting of a bond, as well as the evidence already before the court, provided adequate safeguards against an erroneous deprivation of appellees' property. *See Doehr*, —— U.S. at ——–——, 111 S.Ct. at 2114–15.

■ (b) *September 26, 1991 Orders.* The orders entered on September 26, 1991 were made *after* notice, *after* a hearing, and *after* the posting of a $1,000,000 bond. As such, the risk of erroneous deprivation is lessened considerably by the corresponding additional safeguards since the party suffering the potential deprivation has the opportunity to contest the factual and legal basis for the imposition of the provisional remedies.

In appellants' brief (Docket Document No. 5 at 8–9), they complain about the nature of the hearing held by the bankruptcy court prior to entering the cautionary notices and the orders of prohibition to alienate. They note that no testimony was produced, nor were documents placed into evidence. Yet, after reviewing the transcript of the September 24, 1991 hearing and the record as a whole, we find no evidence that appellants *themselves* sought to produce testimonial or documentary evidence to demonstrate the *bona fides* nature of the financial transactions and their ownership interests, nor did counsel seek a continuance to produce such evidence. As the First Circuit opined in *HMG Property Investors*,

> It is clear to us that the notice and hearing requirements contained in Rule 56.2 can be met short of taking evidence in open court. The standards exist to ensure that, before a provisional remedy issues, the parties will have an opportunity to present relevant facts and arguments so the judge can "consider the interests of all parties and ... adjudicate as substantial justice may require." P.R.R.Civ.P. 56.1. To be meaningful, such an opportunity requires notice and a fair chance to marshal supporting facts and theories—nothing more.

847 F.2d at 914–15. Also, the record is clear that the court had before it substantial documentary evidence supporting appellee's factual allegations relating to the appellants' and debtor's financial transactions. As such, we think that the September 24, 1991 hearing, coupled with the evidence already part of the bankruptcy record, afforded more than sufficient due process protection prior to the grant of the post-hearing provisional remedies.

### (3) Appellees' Interest

The third part of the *Mathews* analysis, the interest of the party seeking the prejudgment remedy together with the government's ancillary interest in its procedures granting provisional remedies, also favors upholding the provisions of Rule 56.

In *Doehr*, the Court found nothing in the record to indicate that Doehr was about to transfer or encumber the property in question, thus rendering it unavailable to satisfy a judgment should plaintiff prevail on the merits. —— U.S. at ——, 111 S.Ct. at 2115. Here, the bankruptcy court has been presented with substantial evidence that Charles and Liliane Unanue, either in their own name or through Emperor or Kalif, have removed assets from the United States. Should these transactions be found to constitute fraudulent conveyances, the assets themselves would not be subject to execution. Unlike the situation in *Doehr*, both the bankruptcy creditors and the Trustee have a strong interest in assuring that whatever assets are found to belong to the debtor are available for distribution. This factor, therefore, supports the grant of provisional remedies, either *ex parte*, subject to the conditions established by Rule 56, or after notice and hearing.

The government of Puerto Rico also has an interest in assuring that judgments rendered in its courts will have effect. In *Doehr*, the Court noted that the state's interest in protecting plaintiff's rights could not be any more weighty than those rights themselves and in that case, plaintiff's interest was *de minimis*. —— U.S. at ——, 111 S.Ct. at 2115. Here, the Chapter 7 trustee and the creditors have a substantially greater interest in assuring that assets are available for distribution, thus increasing the weight of the government's interest. As well, Puerto Rico, through its Supreme Court, has stated the importance of attachment in the context of preventing the concealment or embezzlement of property in order to avoid judgment. *Vda. de Galindo*, 108 D.P.R. (Off.Trans. at 285–86).

■ Finally, with respect to the September 4, 1991 attachment order, we think that this case presents the type of extraordinary or exigent circumstances which would allow for an *ex parte* order to enter. *See Doehr*, at ——, 111 S.Ct. at 2115; *Mitchell*,

416 U.S. at 609, 94 S.Ct. at 1901; *Fuentes*, 407 U.S. at 90–92, 92 S.Ct. at 1999–2000; *Sniadach*, 395 U.S. at 339, 89 S.Ct. at 1821. Goya alleges that Charles Unanue, while claiming no assets in bankruptcy, has, through various devices, fraudulently transferred assets to his wife, Emperor and Kalif. During the Chapter 7 proceedings, both Charles and Liliane Unanue have refused to answer questions dealing with their various financial transactions and ownership interests. The proceeds of the sale of one property have already been transferred outside the jurisdiction of the bankruptcy court. Under the circumstances of this case, even the court's *ex parte* attachment order would be justified in order to insure that assets would be available should appellees prevail in the adversary proceeding.

Based on the preceding analysis, we hold that Puerto Rico's provisional remedy statute, 32 L.P.R.A.App. III R. 56, as applied to the facts of this case, does not violate the Due Process clause to the Constitution of the United States.

### V.

### *Right to Jury Trial*

■ Citing the recent Supreme Court decision *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), appellants also argue that, as parties who have not submitted claims in the bankruptcy proceedings, they are entitled to a trial by jury on the fraudulent transfer claim. In *Granfinanciera, S.A.*, 492 U.S. at 64, 109 S.Ct. at 2802, the Court was careful not to decide the questions whether the jury trial provision, 28 U.S.C. § 1411,[7] permitted bankruptcy courts to conduct jury trials in fraudulent conveyance actions and whether Article III or the Seventh Amendment allowed jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the 1984 Amendments to the Bankruptcy Act.

---

7. Section 1411(a) of Title 28 provides:
   Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual

has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.
28 U.S.C. § 1411(a).

Given that the issue was not decided by the bankruptcy court,[8] we find that the issue is not properly before us on appeal. We, therefore, decline to rule on this issue.

## VI.

### Conclusion

For the reasons stated above, the bankruptcy court orders are affirmed.

IT IS SO ORDERED.

8. Appellees inform us in their brief that the issue has been briefed to the bankruptcy court, which has taken the matter under advisement.