UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2220

IN RE ULPIANO UNANUE CASAL,

Debtor,

GERARDO A. QUIROS LOPEZ, ET AL.,

Plaintiffs, Appellees,

v.

ULPIANO UNANUE CASAL, ET AL.,

Defendants, Appellees,

LILIANE UNANUE, EMPEROR EQUITIES, INC.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jos Antonio Fust , U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Cyr,

Circuit Judges.

Andr s Guillemard-Noble, with whom Harvey B. Nachman and The Law

Offices of Harvey B. Nachman were on brief for defendants, appellants.

Arturo J. Garc a-Sol , with whom Dora M. Penagar cano, McConnell,

Vald s, Kelley, Sifre, Griggs & Ruiz-Suria were on brief for plain-

tiffs, appellees.
Carlos Lugo Fiol, Assistant Solicitor General, Department of

Justice, with whom Reina Colon De Rodr guez, Acting Solicitor General,

was on brief for intervenor.

July 7, 1993

CYR, Circuit Judge. Liliane Unanue ("Liliane") and
CYR, Circuit Judge.

Emperor Equities, Inc. ("Emperor") challenge the constitutional-

ity of various provisional remedies imposed by a bankruptcy court

pursuant to P.R. Laws Ann. tit. 32 App. III, R.56 et seq. We

lack jurisdiction over most of their claims, and find no merit in

the others.

I

BACKGROUND

Ulpiano Unanue Casal ("Unanue"), a former chief execu-

tive officer of Goya Foods ("Goya"), filed a voluntary chapter 7

petition in August 1990, scheduling liabilities totaling $1.1

million and assets of nominal value. Goya, a creditor, charged

that Unanue was continuing to lead a life of luxury, traveling

between seven "fabulously furnished" apartments which he had

fraudulently transferred to Liliane, his wife, prior to bankrupt-

cy. After extensive discovery, Goya moved for leave to commence

an adversary proceeding, in the name and behalf of the chapter 7

estate, see 11 U.S.C. 503(b)(3)(B), against Liliane and E-

mperor, a shell corporation apparently controlled by Liliane.

Although Liliane and Emperor were served with the Goya motion in

July 1991, neither responded.

On August 24, 1991, Goya learned that Emperor had sold

one of Unanue's former condominium apartments some months earli-

er, in May 1991, netting approximately $400,000. Goya promptly

3

renewed its motion for leave to commence adversary proceedings on

behalf of the chapter 7 estate, and sought an immediate ex parte

order of attachment on the apartment-sale proceeds, alleging that

the proceeds were assets of the chapter 7 estate and at risk of

removal from the jurisdiction. On September 4, 1991, the bank-

ruptcy court authorized Goya to commence an adversary proceeding,

and issued an ex parte order of attachment under P.R. Rule 56

("September 4 order").1 On September 9, Goya provided appel-

lants with copies of the summons, complaint, and motion for

provisional remedies.

In the course of executing the writ of attachment, it

was discovered that Liliane had transferred most of the apart-

ment-sale proceeds to a Swiss bank account. On September 12,

1991, alarmed by the apparent removal of the sale proceeds from

the jurisdiction, Goya sought additional provisional remedies

under Rule 56, including "cautionary notices" and a "prohibition

against alienation" of Liliane's remaining properties in Puerto

Rico, Paris, New York and Spain. After notice to Liliane and

Emperor, and a hearing on appellants' constitutional claims, the

bankruptcy court authorized the additional provisional remedies

on September 26 ("September 26 orders").

1Federal Rule of Civil Procedure 64 is applicable in adver-
sary proceedings. See Fed. R. Bankr. P. 7064. Thus, provisional

remedies are available in an adversary proceeding, see id. 7001 &

7064, "under the circumstances and in the manner provided by the
law of the state in which the district court is held," Fed. R.
Civ. P. 64.

4

The September 4 and September 26 orders were appealed

to the district court on the ground that the provisional remedies

imposed by the bankruptcy court were unconstitutional under

Connecticut v. Doehr, 111 S. Ct. 2105 (1991). The Commonwealth

of Puerto Rico intervened. See 28 U.S.C. 2403(b). The dis-

trict court upheld the challenged provisional remedies, see In re

Unanue Casal, 144 B.R. 604 (D.P.R. 1992), and the present appeal

followed.

II

THE SEPTEMBER 4 ORDER

Although the parties have not done so, we inquire into

our jurisdiction to entertain the interlocutory appeal of the ex

parte order entered on September 4. See In re Spillane, 884 F.2d

642, 644 (1st Cir. 1989); In re Recticel Foam Corp., 859 F.2d

1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire

sua sponte into its subject matter jurisdiction"). The courts of

appeals may derive jurisdiction to review a district court

appellate order in a bankruptcy case from either of two statutory

sources: (1) the bankruptcy appeal provisions of 28 U.S.C.

158(d); or (2) the interlocutory appeal provisions in 28 U.S.C.

1292 applicable to civil actions generally. See Connecticut

Nat'l Bank v. Germain, 112 S. Ct. 1146 (1992).2 We trace these

avenues of appeal in turn.

2Germain rejected the widely held view that 28 U.S.C.

158(d) affords the only avenue of appeal from a district court
appellate order in a bankruptcy case. Compare, e.g., In re GSF

Corp., 938 F.2d 1467, 1473 n.4 (1st Cir. 1991).

5

6

A. Section 158(d)

Section 158(d) affords a right of appeal to the courts

of appeals from all "final decisions, judgments, orders [or]

decrees" entered by district courts in bankruptcy cases. See 28

U.S.C. 158(d) (emphasis added). It is often difficult to

determine what constitutes a "final" judgment or order under

section 158(d). There is somewhat less difficulty in doing so in

an adversary proceeding, however, as the finality determination

in such proceedings "closely resembles [that] in 'an ordinary

case [between the parties] in a district court.'" In re Har-

rington, No. 92-2212 (1st Cir. Apr. 26, 1993), slip op. at 4 n.3

(quoting In re Public Serv. Co., 898 F.2d 1, 2 (1st Cir. 1990)).

Accordingly, a district court order in an adversary proceeding is

not appealable as of right under section 158(d) unless it ends

the entire adversary proceeding "on the merits and leaves nothing

for the court to do but enter the judgment." See Stringfellow v.

Concerned Neighbors in Action, 480 U.S. 370, 375 (1987) (quoting

Catlin v. United States, 324 U.S. 229, 233 (1945)).

Even though a somewhat loosened standard of finality

obtains in bankruptcy appeals, on a showing of "special justifi-

cation," see Harrington, supra, at 3, 4 n.3, the exceptions are

narrowly limited in order to avoid piecemeal review. Neverthe-

less, as in an ordinary civil action, the "collateral order"

doctrine established in Cohen v. Beneficial Industrial Loan Corp,

337 U.S. 541 (1949), is applicable to an appeal from an inter-

locutory order entered in an adversary proceeding, see In re

7

Martin, 817 F.2d 175, 178 (1st Cir. 1987), where the non-final

order is, inter alia, "effectively unreviewable on appeal from a

final judgment," see In re Newport Sav. & Loan Assn., 928 F.2d

472, 474 (1st Cir. 1991) (quoting Van Cauwenberghe v. Biard, 486

U.S. 517 (1988)).

On this reasoning, we must decline review of the

September 4 order, as "non-final" under section 158(d). We

adhere to our earlier holding that an interlocutory order allow-

ing an attachment to remain in place is not an appealable "col-

lateral order," since "'the rights of all parties can be ade-

quately protected while the litigation on the main claim pro-

ceeds.'" Lowell Fruit Co. v. Alexander's Market, Inc., 842 F.2d

567, 569 (1st Cir. 1988) (per curiam) (quoting Swift & Co.

Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684,

689 (1950)); the district court provided adequate protection of

appellants' rights in the present case by conditioning its

September 4 attachment order on Goya's posting of a $50,000

surety bond, and there is no indication that appellants' property

is at further significant risk or peril. Moreover, the validity

of the September 4 attachments remains subject to challenge on

eventual appeal from a final judgment, even if the claimant

prevails. See Lowell Fruit, 842 F.2d at 570 (citing Drys Ship-

ping Corp. v. Freights, Sub-Freights, Charter Hire, 558 F.2d

1050, 1052 (2d Cir. 1977)). In the meantime, appellants can

secure release of the attached property by posting a surety bond

of their own, see P.R. Rule 56.3, its cost presumably recoverable

8

from the claimant in the event the defendant prevails on the

underlying claim. Cf. Lowell Fruit, 842 F.2d at 570 (Massachu-

setts law). Given these procedural and remedial safeguards, the

present case clearly falls within the rule in Lowell Fruit:

"'[a]lthough the imposition of provisional remedies may impose a

hardship an unjust hardship if the imposition is improper

the hardship is not so substantial as to justify wasting judicial

resources through piecemeal appeal.'" Id. at 569 (quoting

Trustees of HMG v. Compania Aseguradora Inter-Americana S.A.

Panama, 672 F.2d 250, 251 (1st Cir. 1982) (per curiam)).

B. Section 1292

We also lack jurisdiction over the September 4 order

under 28 U.S.C. 1292(a)(1), which permits interlocutory appeals

of district court orders "granting, continuing, modifying,

refusing or dissolving injunctions." Traditionally, section

1292(a)(1) has been construed narrowly, in light of its language

and its potential for eroding the "finality" doctrine. See,

e.g., Carson v. American Brands, Inc., 450 U.S. 79, 84 (1981);

Kartell v. Blue Shield of Massachusetts, Inc., 687 F.2d 543, 551

(1st Cir. 1982); see also Sierra Club v. Marsh, 907 F.2d 210, 214

(1st Cir. 1990) ("we are unwilling to adopt a more expansive

reading of section 1292(a)(1) than is logically required"); see

generally 16 Charles A. Wright et al., Federal Practice and

Procedure (1977 & 1992 supp.) [hereinafter: Wright & Miller] at

3921 n.10. Thus, "[f]or historical reasons, court-ordered

'attachments,' even where coercive and designed to protect

9

ultimate relief, are typically considered to be 'legal,' not

'equitable' in nature, and therefore are not 'injunctions' for

1292(a)(1) purposes." Bogosian v. Woloohojian Realty Corp.,

923 F.2d 898, 901 (1st Cir. 1991); see also Wright & Miller

3922 n.46. Moreover, where the challenged order is not ex-

pressly captioned as an injunction, see Feinstein v. Space

Ventures, Inc., 989 F.2d 49 (1st Cir. 1993), "a litigant [must]

show that an interlocutory order of the district court might have

a 'serious, perhaps irreparable consequence,' and that the order

can be 'effectually challenged' only by immediate appeal."

Carson, 450 U.S. at 84 (quoting Baltimore Contractors, Inc. v.

Bodinger, 384 U.S. 176, 181 (1955)); see also Kartell, 687 F.2d

at 551; Bogosian, 923 F.2d at 901 (noting "serious consequences"

necessary for appealability).

In the present case, the September 4 order, captioned

as an "attachment," possesses all essential characteristics of an

"attachment" under Puerto Rico law: it is directed to the U.S.

Marshal, rather than appellants, and its execution subjects the

attached property to the jurisdiction of the court. We conclude

that the September 4 order comes within the "attachments" excep-

tion to appealability under section 1292(a)(1). See Bogosian,

923 F.2d at 901. Moreover, even were we to treat the September 4

order as an "injunction" under section 1291(a)(1), appellants

have not shown that the order is insusceptible of effective

vindication following final judgment, see Lowell Fruit, 842 F.2d

at 569-70, and therefore have not made the showing of "serious,

10

perhaps irreparable consequences" required for interlocutory

review. See Carson, supra; see also Navarro-Ayala v. Hernandez-

Colon, 956 F.2d 348, 350 (1st Cir. 1992) ("Even if we assume the

dubious proposition that [the challenged] order . . . could be

considered an injunction, for an injunction to be immediately

appealable it must have a 'serious, perhaps irreparable conse-

quence'") (citation omitted); Chronicle Pub. Co. v. Hantzis, 902

F.2d 1028, 1031 (1st Cir. 1990) ("[e]ven were the [challenged]

order to be deemed an injunction under 1292(a)(1), interlocuto-

ry review would be permissible only upon a showing that the order

will have a 'serious, perhaps irreparable consequence,' and that

the order can be 'effectually challenged' only by immediate

appeal") (citation omitted).

C. Section 1292(b)

Finally, appellants' challenge to the September 4 order

presents no occasion for interlocutory review under 28 U.S.C.

1292(b), which permits the courts of appeals to entertain an

interlocutory appeal on a district court's certification "that

[the challenged] order involves a controlling question of law as

to which there is substantial ground for difference of opinion

and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation." The dis-

trict court did not purport to certify the September 4 order for

11

immediate appeal,3 and, in any case, a court of appeals may not

exercise its discretion to entertain an interlocutory appeal

under section 1292(b) unless the appellant requests it to do so

within ten days after entry of the district court order from

which appeal is sought. No such timely request was made by

appellants. "[T]he statute's ten-day limit is jurisdictional,

which is to say that the law does not permit us to forgive a

party's failure to comply." Rodriguez v. Banco Central, 917 F.2d

664, 668 (1st Cir. 1990).

III

THE SEPTEMBER 26 ORDERS

The September 26 orders, authorizing the filing of

"cautionary notices" against appellants' real properties, and

prohibiting their alienation by appellants, present a somewhat

closer question. On the one hand, the "cautionary notice," a

creature of Puerto Rico law, is roughly analogous to the Anglo-

3The district court opinion stated: "should the bankruptcy
court's orders be deemed interlocutory, we would have granted

leave to appeal these orders because of the important constitu-
tional issues they raise." 144 B.R. at 608, n.4 (emphasis
added). The quoted statement appears in a footnote discussion of
the district court's interlocutory appellate jurisdiction under

28 U.S.C. 158(a). See also 28 U.S.C. 157. In relevant part,

158(a) states: "The district courts . . . shall have jurisdic-
tion . . ., with leave of the [district] court, from interlocuto-
ry orders and decrees[] of bankruptcy judges entered in cases and
proceedings referred to the bankruptcy judges under section 157
of this title." Thus, in context, the district court's footnote
did not purport to be a 1292(b) certification, nor did it
certify that "an immediate appeal [to the court of appeals] may
materially advance the ultimate termination of the litigation
. . . ." 28 U.S.C. 1292(b).

12

American notice of lis pendens, see Cruz La Corte v. Mojica

Sandoz, 109 D.P.R. 354 (1980); see also Correa Sanchez v. Regis-

trar, 113 D.P.R. 581, 13 O.T. 750, 760 (1982) ("cautionary

notice" is recorded in Registry of Property for primary purpose

of subjecting property to the remedy obtained in a pending legal

proceeding). Orders imposing lis pendens have been viewed as

"attachments" for section 1292(a) purposes. See Rosenfeldt v.

Comprehensive Acctg. Serv. Corp., 514 F.2d 607, 609 n.2 (7th Cir.

1975) (Stevens, J.); but cf. Beefy King Int'l, Inc. v. Veigle,

464 F.2d 1102, 1104 (5th Cir. 1972) (per curiam) (holding lis

pendens analogous to injunction under Florida law). On the other

hand, a "prohibition against alienation" seems closely akin to an

injunction; it is directed to appellants personally, enforceable

by contempt, and "'designed to accord or protect, some or all of

the substantive relief sought' in the action." Bogosian, 923

F.2d at 901 (quoting 16 Wright & Miller 3922 at 10, 26). The

fact that the September 26 orders are not captioned as injunc-

tions, and that the district court and the parties consistently

treated them as attachments, is relevant but not dispositive of

their appealability under section 1292(a)(1). See Manchester

Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied

Industries Fund, 967 F.2d 688, 690 (1st Cir. 1992) ("we consider

the substantial effect of the order . . . in deciding whether an

appeal is available" under 1292(a)(1)) (emphasis added); cf.

Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47 (1st Cir. 1986)

(where an order has attributes of both an attachment and an

13

injunction, treatment by district court and parties is "factor to

be considered" for purposes of appealability). And it is at

least conceivable, notwithstanding the $1 million surety bond

posted by Goya, that appellants might be able to assert "serious,

perhaps irreparable" consequences from the prohibition on aliena-

tion of properties having a stated value approximating $7 mil-

lion.

We need not delve into the matter, however, as appel-

lants' constitutional challenge to the September 26 orders would

fail on the merits even if appealable under section 1292(a)(1).

See Norton v. Mathews, 427 U.S. 524, 532 (1976) (where party

requesting dismissal based on lack of jurisdiction clearly would

prevail on the merits, court may bypass close jurisdictional

question). Appellants' constitutional challenge is based on

Connecticut v. Doehr, 111 S. Ct. 2105, which held that, absent

exigent circumstances, "[a] plaintiff's interest in attaching

. . . property does not justify the burdening of [a defendant's]

ownership rights without a hearing to determine the likelihood of

recovery." Id. at 2115. Here, however, appellants were given

notice and a hearing prior to the issuance of the September 26

orders. At the hearing, Goya demonstrated a reasonable "likeli-

hood of recovery," based on (1) the dates of appellants' purchase

of the various properties; (2) sudden changes in the debtor's

cash position around the times of these purchases; (3) appel-

lants' repeated refusals to identify other sources of funding for

their acquisition of these properties; (4) appellants' apparent

14

attempt to remove assets from the jurisdiction at about the time

Goya commenced its investigation into the debtor's connection

with those assets; and (5) the debtor's apparent past involvement

in appellants' financial affairs. Appellants, for their part,

presented little or no rebuttal evidence, preferring to reserve

their right to present their case at trial. Doehr does not

require a trial on the merits prior to the issuance of a provi-

sional remedy. Appellants were afforded due process before the

September 26 orders issued. See id. We therefore reserve for

another day the question whether a "cautionary notice," linked

with a "prohibition against alienation" of real property, is

appealable as an injunction under 28 U.S.C. 1292(a)(1).

IV

CONCLUSION

The appeal of the September 4 order of attachment is

dismissed for lack of jurisdiction, without prejudice to appel-

lants' right to renew their constitutional challenge upon the

conclusion of the pending adversary proceeding. The due process

challenge to the September 26 orders imposing "cautionary notic-

es" and a "prohibition against alienation" of appellants' proper-

ties is denied on the merits.

Dismissed, in part, for lack of jurisdiction; affirmed,

in part, on the merits. Costs to appellees and intervenor.

15