IN THE MATTER OF GIDEON REYNOLDS, petitioner for the benefit of the Insolvent Law.

The passage of the Bankrupt Law of the United States of 1867 suspended the operation of the State Insolvent law of Rhode Island, so far as the provisions of the former applied to the subject matter of the latter.

THE creditors appearing to oppose the petition of Gideon Reynolds for the benefit of the Insolvent law of the State, filed a motion to dismiss the petition, upon the ground that the jurisdiction of the court over such cases had ceased to exist after the passage of the Bankrupt Law of the United States in 1867, it being apparent upon the record that the petitioner's debts exceeded three hundred dollars.

*James Tillinghast, for creditors,* filed and argued the following brief upon the motion :—

I. The exercise by Congress of its constitutional power to establish a uniform law upon the subject of Bankruptcies throughout the United States, supersedes State legislation upon the same subject, and, *ipso facto,* while the act of Congress remains in force, suspends the operation of existing state laws upon persons and cases within the purview of such act. *Sturgis* v. *Crowninshield,* 4 Wheat. 122 ; *Ex parte Eames,* 2 Story, 322 ; *Griswold* v. *Pratt,* 9 Met. 16 ; *Commonwealth* v. *O'Hain,* Am. Law Reg. Oct. 1867, p. 765 ; see per Shaw, C. J., *May* v. *Breed,* 7 Cush. 40.

II. State insolvent laws which discharge the person of the debtor from arrest only, as well as those which discharge the debt, are suspended by the act of Congress ; there is no real distinction between them in this respect. See above cases ; also 3 Story on Constitution, p. 4 § 1100 to p. 15 § 1110 ; 2 Kent Com. 370 *et seq.* ; Hilliard on Bankruptcy, p. 11 § 21. Compare *Adams* v. *Story,* Paine C. C. Rep. 79, where the New York act of April, 1811, is held to be an *insolvent act,* with *Blanchard* v. *Russell,* 13 Mass. 4, where it is stated by Parker, C. J., to be

clearly a *bankrupt* act, and with *Sturgis* v. *Crowninshield*, 4 Wheat. 122, where Marshall, C. J., expressly declines to decide which it is, whether an *insolvent* or a *bankrupt* act. In fact, all State laws are necessarily *insolvent* acts in the sense that they cannot give the debtor a *complete discharge*, but can only discharge him from debts *subsequently* contracted, and cannot operate *extra territorially*. *Sturgis* v. *Crowninshield*, 4 Wheat. 122 ; *Ogden* v. *Saunders*, 12 Wheat. 273 ; while a discharge under a national bankrupt act is a complete discharge everywhere. *May* v. *Breed*, 7 Cush. *supra*. The Roman law of cession, *cessio bonorum*, as well as most of the *continental* laws, are *insolvent* acts merely. 3 Story on Constitution, *supra*.

III. Inasmuch as the subsequent proceedings under our State law have no relation to the filing of the petition, and the assignment only operates *from its date*, and not retroactively, it seems to follow that all proceedings upon cases pending at the time the bankrupt act took effect are suspended. Compare *Judd* v. *Ives*, 4 Met. 401.

*W. Hayes and C. Matteson, for the petitioner*, filed and argued the following brief against the motion :—

A creditor, or a person claiming to be such, of the petitioner, moves the dismissal of the petition upon the ground, that the Insolvent Act of Rhode Island is suspended by the passage of the national bankrupt bill. The petitioner denies this effect to the act of Congress. The bankrupt law asserts for itself no such power. It claims to suspend legal proceedings upon the same subject matter only when its provisions are invoked, and then not before a certain period in each case. Section 21 Bankrupt Act. If any State insolvent or bankrupt law is suspended by the enactment of a general system of bankruptcy, that effect is due to the provision of the Constitution vesting the power in Congress to establish a uniform system of bankruptcy and the construction of it by the courts. The Supreme Court of the United States has construed in this respect only the bankrupt act of 1800. The acts of 1841 and 1867 are far more comprehensive. The two leading cases in the Supreme Court, when carefully analyzed, do not cover the ground claimed for them

in the cases *Ex parte Eames*, 2 Story, 322, and *Griswold* v. *Pratt*, 9 Met. 16.   The case *Sturgis* v. *Crowningshield*, 4 Wheat. 122, so often cited, decided that a State might pass a bankrupt law, if it did not impair the obligation of contracts, and there was no act of Congress in force establishing a uniform bankrupt system in conflict with said law.   It held that a law discharging a debt entered into *before its passage* impaired the obligation of contracts within the meaning of the constitution of the United States.   The case of *Ogden* v. *Saunders*, in 12 Wheat. 213, decided that a State insolvent law did not impair the obligation of future contracts between citizens, but could not affect the rights of creditors who are citizens of another State.   In neither case is it decided, for the point was not raised, that the passage of a bankrupt law suspended *ipso facto* the operation of State insolvent laws.   This can only be *implied* from language used in *Sturgis* v. *Crowninshield*, 4 Wheaton, 194, and in *Ogden* v. *Saunders*, 12 Wheaton, 273.   But all the cases refer to insolvent laws that are virtually bankrupt laws as to all contracts entered into after their passage.   In *Sturgis* v. *Crowninshield*, 4 Wheaton 194, the court refers to the distinction between bankrupt and insolvent laws, and to the difficulty of drawing the line of distinction between them.   When a law goes to the extent of discharging a contract, though entered into subsequently to the passage of the act, it is treated by the courts as *pro tanto* a bankrupt law, and therefore open to all the objections to the existence of two systems of bankruptcy.   And though called an insolvent law by the court in *Ex parte Eames*, 2 Story, 322, and in *Griswold* v. *Pratt*, 9 Met. 16, it was, as far as any State law can be, a perfect bankrupt act.   See Act of Mass. 1838; also Insolvent Act of R. I. But an act that merely discharges the person of the debtor from imprisonment is nowhere considered as a bankrupt act, or in collision with such an act of Congress.   Upon the examination of the records of this court during the existence of the U. S. Bankrupt Act of 1841, it appears that the insolvent act of this State was uniformly administered by the court.   No one has yet claimed that the bankrupt act suspended, by the fact of its passage, the law in relation to poor debtors.   Yet it is difficult to perceive

why the same argument that is·made in behalf of suspension of one law, does not apply to the suspension of the other.

The opinion of the court was read by BRADLEY, C. J. This is a motion to dismiss the petition of Gideon Reynolds for the benefit of the insolvent law of the State, upon the ground that this law, in its operation in favor of insolvents whose debts exceed the sum of three hundred dollars, was suspended by the passage of the bankrupt law of the United States, now in force.

The decision of the motion upon this ground depends upon the construction of the provision of the Constitution of the United States, which declares that "The Congress shall have powers to establish uniform laws upon the subject of bankrupt· cies throughout the United States." Art. 1, § 8.

In considering this question, of an alleged conflict of these laws, we naturally inquire first, whether the provision of the Constitution which we have quoted, confers the power upon Congress to the·exclusion of a similar power in the States?" If it does not prohibit the power in the States absolutely, does it limit the exercise of that power, either to time or subject, when and upon which Congress has not legislated? or does it restrain the laws of the State only from acting upon those cases upon which the law of the United States may be called into exercise? And if the two jurisdictions thus come in conflict in particular cases, is that which is prior in time to prevail, or that of the United States, by any paramount power conferred upon it by this clause of the constitution? Another class of inquiry arises as to the scope and extent of legislative power conferred upon Congress in the phrase "subject of bankruptcies."

The first class of these questions was early determined by the Supreme Court of the United States, in *Sturgis* v. *Crowninshield*, 4 Wheaton, 122. It is not the mere existence of the power (they say) but its exercise, which is incompatible with the exercise of the same power by the States. It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the States. And they decided "That until the power to pass uniform laws upon the subject of bankruptcies be exercised by Congress, the States

are not forbidden to pass a bankrupt law." Mr. Webster, in his argument in Ogden v. Saunders, 12 Wheaton, 213, said: " The argument used in Sturgis v. Crowninshield maintained that the prohibition of the constitution was levelled only against interference in individual cases, and did not apply to general laws." Yet the court rejected that conclusion; and also held, " that the provision of the constitution in question did not exclude the right of the States to legislate on the same subject except when the power is actually exercised by Congress and the State laws conflict with those of Congress."

To state the decision precisely in the language of the certificate in the first case, and as reäffirmed in the second, we find the law to be " That a state has authority to pass a bankrupt law, provided there be no act of Congress in force to establish an uniform system of bankruptcy conflicting with such law." In Hoyle v. Zacharie and Turner, 6 Peters 638, the court say, " These decisions are final and conclusive."

We come then to the second inquiry : What is the extent and scope of the power of Congress, by force of the provision to legislate upon the subject of bankruptcy ? Does it include the power to legislate upon insolvency as defined in the law ? The bankruptcy statutes and the insolvency statutes of England provided respectively—1st.: The bankrupt process was moved by creditors against certain classes of debtors for a distribution of the bankrupt's property among all the creditors through the officers of the Court, and it provided for a discharge of the debt well as the person of the bankrupt. 2d. The insolvent laws authorized the debtor, and a much larger class of debtors, including those liable to proceedings in bankruptcy, to move the process for such distribution of his property, but discharged only the person of the debtor and did not discharge the debt. The case of Jilles, assignee of Routlege v. Montford, 4 Barn. and Ald. 121, illustrates the operation of these two systems upon one and the same person in England.

The bankrupt law of 1841 was the first one passed by Congress which introduced the system of an insolvent law in conjunction with that of bankruptcy as exercised in English statutes.

In the Matter of Gideon Reynolds.

The constitutionality of the law of '41 was contested upon this ground. It was claimed that the insolvency provisions of that law were not authorized, by the constitutional power to pass laws upon the subject of bankruptcies. The cases of *Kanster* v. *Kohans* and *Visser*, 5 Hill 317, and *Sackett* v. *Andross*, same volume, in the opinions of Mr. Justice Cowen sustaining the law, (Chief Justice Nelson concurring in the decision,) and of Mr. Justice Bronson *contra*, exhibit the grounds of this controversy with great fullness and eminent ability. The Court decided that the grant of power in the Constitution was intended to be as broad as the subject itself, and that it was not limited to the statute modes in which that power had been theretofore exercised by Parliament. They therefore sustained the voluntary insolvent part of the law. The broadest interpretation of the clause seems to have prevailed in the country, throughout the various circuits, in the opinions of the circuit judges, as the Supreme Court had held, that, under that law, questions could not be taken to that Court, either upon certificate of division of opinion or an appeal or writ of error. *Nelson* v. *Carland*, 1 Howard 265. The Judges of that Court seemed to have concurred in the opinion of Mr. Justice Catron in a note to the preceding case—Klein's case. He held that the subject of bankruptcies spoken of in the Constitution was a subject of extensive and complicated jurisdiction; that " it extends to all cases where the law causes to be distributed the property of the debtor among his creditors. This is its least limit. Its greatest is a discharge of the debtor from his contracts, and all intermediate legislation affecting substance and forms, but tending to further the great end of the subject, distribution and discharge, are in the competency and discretion of Congress." He further says, " I deem every State law a bankrupt law, in substance and fact, that causes to be distributed by a tribunal the property of a debtor among his creditors, and it is especially such if it causes the debtor to be discharged from his contract within the limits prescribed by the case of *Ogden* v. *Saunders*." Such a law may be denominated an insolvent law. Still it deals directly with the subject of bankruptcies, and is a bankrupt law in the sense of the Con-

stitution, and if Congress should pass a similar law it would suspend the State law while the act of Congress continued in force." Judge Story, *Ex-parte Eames*, 2 Story 322, held, in a case of conflict of title under the State insolvent law of Massachusetts and the bankrupt law of '41, that the title under the State law must give way to the paramount title derived from proceedings in bankruptcy. That State law containing the involuntary as well as voluntary provisions, and discharging the debt as well as the person, was in every sense, though not in name, a bankrupt law, and in the collision occurring in carrying out the provisions of the different systems, the decision was, under the authority we have considered, inevitable.

But the Judge goes further and declares that as to the proceedings in future cases, " both systems cannot be in operation or apply at the same time to the same persons, and where the State and national legislation upon the same subject and the same persons come in conflict, the national laws must prevail and suspend the operation of State laws. This, so far as I know, has been the uniform doctrine maintained in all the courts of the United States." And after citing the cases of *Sturges* v. *Crowninshield*, and *Ogden* v. *Saunders*, he says, in conclusion, " the moment that the bankrupt act does or may operate upon the person or case, that moment it virtually supersedes all State legislation." In the case of *Griswold* v. *Pratt*, 9 Met. 16, the Court fully consider the question, " whether the enactment of a bankrupt law does *ipso facto* suspend and abrogate, during the continuance of such law, all general insolvent laws of the several States so far as they have reference to future cases, and are applicable to the same persons, the same contracts and the same assets as are made subject to proceedings under the bankrupt law." And they decide that question in the affirmative as applicable to the insolvent law of Massachusetts—" considering (they say) our State insolvent law to be a system introduced for the purpose of sequestering the effects of an insolvent debtor and of discharging him from all debts contracted after the passage of the law, we are satisfied that the two systems cannot stand together," and that the bankrupt law suspends the State law.

The Courts of Maryland came to the same conclusion in regard to the insolvent laws of that State. In the case of *Larrabee* v. *Talbot*, 5 Gill, 426, the Court, quoting fully from the opinion of Judge Story in *exparte Eames*, decide that the bankrupt law of '41 "did not suspend the operation of the State insolvent laws until the day it went into effect."

So, in Louisiana, the Courts, speaking of their insolvent system, wherein a debtor makes his *cessio bonorum* to a judge for the benefit of creditors, and syndics are appointed to distribute the property, say: "This power was specially delegated to Congress and only reserved by the several States in so far and so long as Congress did not see fit to exercise it. The moment they exercised the power, the State laws upon the subject became inoperative and were suspended." A similar decision is reported in the Law Register for October, 1867, page 765, in Pennsylvania, by the District Court for the Alleghany District, with the concurrence of the Judges of the Common Pleas of that State, upon the insolvent laws of that State, which only discharged the debtor from imprisonment and did not release the debt.

The Court in North Carolina seems to have taken a different view in the *Ziegenfuss Case*, 2 Iredell 463. We have not been able to examine the opinion, nor have we been referred to or found any other decision concurring with it.

Our State insolvent law authorizes, upon the application of the debtor, proceedings for the distribution of his property only and the discharge of his person from imprisonment. It does not release the debt. The bankrupt law of 1867 does all this upon such application, and also releases the debt.

Assuming the constitutionality of the bankrupt law in other respects, which has neither been discussed or denied before us, we must hold, that, under the decisions and concurring practice to which we have referred, these provisions of the bankrupt law authorizing a debtor to apply for and obtain a discharge of his debts, and providing for a distribution of all his property among all his creditors, are within the legislative power of Congress under this grant in the Constitution.; the system, differing in this department only from our insolvent law in extending the

release, but not at all in the provisions for taking possession, through officers appointed by the Court, of the entire property of the insolvent and distributing it among all his creditors, covers all the provisions of our insolvent law. It legislates for all of them and for more in its voluntary department, and adds thereto the involuntary department of the law enabling creditors to move for all these processes against the debtor in their own behalf. We must, therefore, find that Congress has, within its constitutional powers, legislated upon the entire subject of our insolvent laws. And such legislation, it has long been settled, when exercised, suspends the State legislation upon the same subject. We must therefore grant the motion.

We may remark that this decision does not cover the law of the State for the discharge of poor debtors from imprisonment. Such laws in this State were adjudged constitutional in the case of *Mason* v. *Hall*, 12 Wheaton, 370, by the Supreme Court, after the decisions in *Sturgis* v. *Crowninshield* and *Ogden* v. *Saunders*, had been rendered.