DECISION
The issue before the court is whether all or some of the provisions of the Rhode Island Receivership Statute, G.L. § 1956 7-1.1-90, et seq., are pre-empted by the Federal Bankruptcy Code. Jurisdiction for this receivership proceeding is pursuant to G.L. 1956 § 7-1.1-90, et seq.
Facts/Travel
Defendant ("G-7") is a corporation engaged in the business of real estate development. Plaintiffs are owners of voting common stock of G-7. On or about September 3, 1993, G-7 purchased a parcel of real estate ("property"), located in Dartmouth, Massachusetts, from Victor A. Palumbo Jr., Trustee of the Palumbo Realty Trust. As consideration for the conveyance of the property, defendant issued its promissory note secured by a purchase money mortgage for approximately $3,321,400.00. The plan of G-7 was to develop the property into a shopping plaza.
Subsequent to the purchase of the property, G-7 entered into a lease agreement with the United States Postal Service. The lease agreement would allow G-7 to construct a post office on a portion of its property which the postal service would then lease from G-7. To consummate this transaction, G-7 requested that the trust release that portion of property where the post office was to be located. When the trust did not respond to G-7's request, plaintiff shareholders petitioned for the appointment of a receiver of G-7's assets. (See Petition for Appointment of a Receiver). On or about August 22, 1996, Allan Shine, Esq. ("Shine") was appointed temporary receiver of G-7; Shine subsequently was appointed permanent receiver. Also, on or about November 8, 1996, Shine was appointed ancillary receiver of G-7 corporation pursuant to an order of the Bristol County Superior Court located in the state of Massachusetts.
As receiver, Shine filed a petition in Rhode Island Superior Court for inter alia, a release of all "interests, claims, liens, or encumbrances against the post office parcel." (See Petition to Authorize Receiver To Assume Lease, To Obtain Financing For Construction And To Construct On Property at 5.) Palumbo, as Trustee of the Palumbo Realty Trust, objected to the receiver's request, asserting that its contract rights would be "substantially impair[ed]," and that this state receivership proceeding had been pre-empted by the Bankruptcy Code.[1] (See
Objection To Petition To Authorize Receiver To Assume Lease, To Obtain Financing For Construction And To Construct On Property at 1.) During the negotiations between the parties, the lease between G-7 and the Postal Service expired. The post office refused to renew the lease.
A hearing was held on May 30, 1997, during which this court determined "that it should take up the merits of the controversy raised by the Palumbo Trust's invocation of constitutional issues to wit, pre-emption of state law by the Federal Bankruptcy Code." (Tr. 26.) An order was entered on June 24, 1997, whereby the Court, inter alia, granted Shine's request for briefing on the federal pre-emption issue. Palumbo moved for reconsideration of the June 24, 1997 order and attempted to withdraw his claim that the receivership had been pre-empted by the United States Bankruptcy Code. (See Withdrawal, Waiver and Relinquishment of Any Claim of Federal Pre-emption; Palumbo Realty Trust's Motion For Reconsideration.) After a hearing on July 25, 1997, this Court denied Palumbo's motion for reconsideration and established filing dates for materials on the federal pre-emption issue. (See
Order dated August 19, 1997.)
The receiver has submitted briefs in this case. In addition, various amicus curae briefs either prepared specifically for this case[2] or for the In re Newport Offshore LTD case (No. 85-00723) case,[3] currently before the United States Bankruptcy Court for the District of Rhode Island, are now before this court. Palumbo has not filed his own brief in this case. However, amicus briefs, prepared by the United States Attorney and the United States Trustee in In re Newport Offshore LTD, have been submitted to this Court.
I. Background
A. The Concept of Federal Pre-emption
Congress's power to pre-empt state law is found in the United States Constitution. The Supremacy Clause provides:
 "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary not withstanding." U.S. CONST. art. VI, § 2.
At the same time, "because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action." Medtronic,Inc. v. Lohr, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996). Instead,
 "In all pre-emption cases, and particularly in those in which Congress has `legislated . . . in a field which the States have traditionally occupied,' Id. at 2250 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)), we `start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Id.
(quoting Rice, 67 S.Ct. at 1152) (citations omitted).
Accordingly, only state laws which "`interfere with, or are contrary to federal law[s]," are nugatory. Hillsborough County v.Automated Medical Labs, 471 U.S. 707, 712-13, 105 S.Ct. 2371, 2375 85 L.Ed.2d 714 (1985) (quoting Gibbons v. Ogden, 9 Wheat 1, 211 (1824)(Marshall, C.J.)).
Congress may evince an intent to pre-empt state law in various ways. First, Congress may expressly pre-empt state law.Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 116 S.Ct. 1103, 1107-08, 134 L.Ed.2d 237 (1996). In those situations, the "federal statute . . . reveals an explicit congressional intent to pre-empt state law." Id. at 1108 (citing Jones v. RathPacking Co., 430 U.S. 519, 525, 530-31, 97 S.Ct. 1305, 1309-10, 1312-13, 51 L.Ed.2d 604 (1977)). Here there is no express language in the Bankruptcy Code mandating a finding of pre-emption.
"More often, explicit pre-emption language does not appear, or does not directly answer the question" of pre-emption. BarnettBank, 116 S.Ct. at 1108. In the absence of such express language, "courts must consider whether the federal statute's `structure and purpose,' or nonspecific statutory language reveal a clear, but implicit, pre-emptive intent." Id. at 1108 (quoting Jones, 97 S.Ct at 1309-1310). (Citation omitted.) When a federal statute is "`so pervasive'" in a particular area, Id. at 1108 (quoting Rice,
67 S.Ct. at 1152), or is in "`irreconcilable conflict'" with state law, Id. (quoting Rice v. Norman Williams Co.,458 U.S. 654, 659, 102 S.Ct. 3294, 3298-3299, 73 L.Ed.2d 1042 (1982)), that federal statute pre-empts the state law. Further, when the "state law may `stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" Id.
at 1108 (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)), or when it is "`physical[ly] impossib[le]'" to comply with both federal and state statutes,Id. at 1108 (quoting Florida Lime Avocado Growers, Inc. v.Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963)), state law is pre-empted.
B. Federal Bankruptcy Law and Pre-emption of Inconsistent StateInsolvency Statutes
Although the United States Constitution grants Congress the power "to establish . . . uniform laws on the subject of bankruptcies throughout the United States," U.S. CONST. art. I, § 8, there have been periods of time when Congress refrained from enacting bankruptcy legislation. Thus, many states, realizing the need for regulation in this particular area, passed state bankruptcy laws (or "insolvency legislation"). See Charles Jordan Tabb, The History of the Bankruptcy Laws in the UnitedStates, 3 Am. Bank. Instit. L.Rev. 5, 12-14 (1995). Even after federal bankruptcy laws were enacted, state insolvency laws remained valid as long as they did not conflict with federal bankruptcy legislation. Sturges v. Crowninshield, 4 Wheat 122, 4 L.Ed. 529 (1819).[4] See also, Stellwagen v. Clum,245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918); Lace v. Smith, 34 R.I. 1,82 A. 268 (1912). Some states, most importantly Rhode Island, recognized that their state insolvency laws had been pre-empted by federal bankruptcy laws.[5] In Giroux, the Rhode Island Supreme Court stated that "for well over a century this court has recognized that the passage of federal bankruptcy laws has pre-empted our state law of insolvency and the rights of debtors." Giroux, 670 A.2d at 1230 (citing In the Matter ofReynolds, 8 R.I. 485 (1867)). In Reynolds v. E C. Associates,693 A.2d 278 (R.I. 1997), the Rhode Island Supreme Court once again recognized the fact that its state insolvency laws had been "superseded by the enactment of the Bankruptcy Code." Id. at 281.
The United States Supreme Court has made clear that state insolvency laws containing a discharge provision, Shoe, 49 S.Ct. at 110, or which are "tantamount to bankruptcy," Straton v. New,283 U.S. 318, 327, 51 S.Ct. 465, 469, 75 L.Ed. 1060 (1931), are clearly pre-empted by federal bankruptcy law. In Shoe, the Court had occasion to review an Arkansas insolvency statute. Shoe, 49 S.Ct. at 110. The statute in question "classifie[d] creditors, prescribe[d] the order of payment of their claims and g[a]ve preference to those fully discharging the debtor in consideration of pro rata distribution." Id. (Citations omitted.) In holding that provisions of the Arkansas statute were superseded by the Bankruptcy Act, the Court said:
 "Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." Shoe, 49 S.Ct. at 110. (Citations omitted.)
In New, the United States Supreme Court defined the term "tantamount to bankruptcy." ". . . State insolvency laws which are tantamount to bankruptcy . . . provide for an administration of the debtor's assets and a winding up of his affairs similar to that provided by the national act. . . ." New, 51 S.Ct. at 469. Not all state statutes, however, are invalid merely because they "provide for sale and distribution of a debtor's property." Id.
Discussing Stellwagen, the court said:
 "It was pointed out in Stellwagen v. Clum, supra, that state laws which provide for sale and distribution of a debtor's property may not amount to insolvency laws; and it was there held that such laws, if not inconsistent with the administration of the bankruptcy act, are available to litigants." Id.
Classifying the procedure as a "proceeding in equity," the court permitted the appointment of commissioners to execute liens against a bankrupt's property obtained more than four months prior to the debtor's filing bankruptcy. Id.
II. Receivership Statutes
The United States, as amicus, In re Newport Offshore LTD,supra, argues that portions[6] of the Rhode Island Receivership statute are "tantamount to bankruptcy" and thus pre-empted by federal bankruptcy law. (See Brief of the United States of America as Amicus Curae at 5-10). In support of this position, the United States quotes Straton:
 "It is a `settled rule that state insolvency laws which are tantamount to bankruptcy because they provide for an administration of the debtor's assets and a winding up of his affairs similar to that provided by the national act are . . . null and void.'" (Brief of the United States of America as Amicus Curae at 5-6) (citing Straton, 51 S.Ct. at 469), (Citation omitted.)
The United States Trustee takes a similar position, labeling the Rhode Island receivership statute as an "insolvency proceeding."(See Memorandum In Support of Objection To Motion of Disbursing Agent For Authority To Make Distribution of Unclaimed Funds To State Court Receivers at 7-9).[7]
The concept of a receiver was introduced to the American legal system in the context of equity. 65 Am.Jur. 2D Receivers
§ 1 (1972). A great deal of our current law of receivers has developed in part due to expansions in the field of corporate law. Id. Receivership statutes, used in the aid of insolvent corporations, are codifications of equitable principles.[8] As explained in Mader, ". . . the appointment of a receiver for an insolvent corporation . . . is merely declaratory of an authority long held to be within the inherent equitable powers of our courts." In re Mader's Store for Men, Inc., 254 N.W.2d 171, 179 (1977). (Citations omitted.) The Rhode Island Supreme Court has taken this very same position. In Jablouski v. Simons Land Co.,46 R.I. 277, 127 A. 3 (1924), the Court held a creditor's petition which represented a debtor as being insolvent, and asking for the appointment of a receiver, was a proceeding in equity. See also Bogosian v. Woloohojian Realty Corp,923 F.2d 898 (1st Cir. 1991).
There is no indication, express or implied, that Congress intended to supplant equitable receivership statutes by enacting federal bankruptcy law. In fact, a review of the Bankruptcy Code proves that the Legislature anticipated the existence of state court receiverships. First, by definition, the term "custodian" is defined as a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101 (11)(A). "There is no question that a receiver appointed by a state court is clearly a `custodian' within the meaning of 11 U.S.C. § 101 (10)." French BourekasInc. V. Turner, 199 B.R. 807, 818 (E.D.N.Y. 1996) (note 23 refers to Section 101 (11)(A) of Title 11 of the U.S. Code) (citing Inre CCN Realty Corp., 19 B.R. 526, 528 (S.D.N.Y. 1982)). Second, by statute, the Bankruptcy Court may abstain from hearing a case. Section 305 (a)(1) provides:
 "(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if —
 (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;" 11 U.S.C. § 305
(a)(1).
A bankruptcy court may use abstention when a state court receiver has been appointed. In re Silver Spring Center, 177 B.R. 759
(Bankr. D.R.I. 1995); In re O'Neil Village Personal Care Corp.,88 B.R. 76 (Bankr. W.D. Pa. 1988).
Also, the United States Supreme Court's pronouncement inPobreslo v. Boyd Co., 287 U.S. 518, 525, 53 S.Ct. 262, 77 L.Ed. 469 (1933), supports the validity of state receivership statutes even in the face of federal bankruptcy legislation. In Boyd, the court upheld a Wisconsin statute which "regulat[ed] and control[led] voluntary assignments for the benefit of creditors."Id. at 262-63. In its holding the court said:
 "There is nothing in the assignment, the application to the circuit court to take jurisdiction, or its order thereon, to suggest that the discharge of the assignor was contemplated. The provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors apply whether the assignor is solvent or insolvent. They do not prevent creditors from bringing action against the debtor or require those seeking to participate in the distribution of the estate to stipulate for his discharge. And, quite in harmony with the purposes of the federal Act, the provisions of chapter 128 that are regulatory such voluntary assignments serve to protect creditors against each other and go to assure equality of distribution unaffected by any requirement or condition in respect of discharge." Id. at 264.[9]
In "harmoniz[ing]" the Wisconsin statute with the bankruptcy act, the Court demonstrated how state receivership statutes can coexist with federal bankruptcy legislation. See also Mader, 254 N.W.2d. at 181. As stated in Mader "it is apparent that state legislation does not encroach in a forbidden way upon the field occupied by the Bankruptcy Act merely because it provides for a distribution of the assets of an insolvent corporation among its creditors. . . ." Id.
Finally, in reviewing the statutes at issue, this court is mindful of the fact that state receivership statutes may run afoul of federal bankruptcy law. See Mader, 254 N.W.2d. at 180 (citing Shoe, 49 S.Ct. at 108). See also, Moody v. Port ClydeDevelopment Co., 66 A. 967 (Me. 1907). If a state statute "provid[es] for the discharge of a debtor or exact[s] from creditors a stipulation of discharge as a condition of participating in the distribution of the debtor's assets," that statute is clearly pre-empted. Mader, 254 N.W.2d at 180 (citingShoe, 49 S.Ct. 108). (Citation omitted.) The Rhode Island Receivership statute does not effectuate a discharge.
By Reply Memoranda, the United States Trustee makes two arguments with respect to discharge. First, the trustee contends that G.L. 1956 § 7-1.1-95, the "Decree of Involuntary Dissolution" provision, operates as a discharge. (See Reply of the United States Trustee to Amicus Curae Memoranda at 5.) Although section 7-1.1-95 provides,
 "In proceedings to liquidate the assets and business of a corporation, when the costs and expenses of the proceedings and all debts, obligations, and liabilities of the corporation shall have been paid and discharged and all of its remaining property and assets distributed to its shareholders, or in case its property and assets are not sufficient to satisfy and discharge the costs, expenses, debts, and obligations, all the property and assets have been applied so far as they will go to their payment, the court shall enter a decree dissolving the corporation, whereupon the existence of the corporation shall cease,"
a dissolution is not a discharge. The power of dissolution is an inherent power of the state. As enunciated in Murphy v. Penniman,66 A. 282 (Md. 1907), "the present bankruptcy act [a predecessor of the modern day bankruptcy code] never contemplated prohibiting a state court from dissolving one of its own corporations which became insolvent." Id. at 289. Further, debts of a dissolved corporation are not discharged. In making this statement, this Court is mindful of the trust fund doctrine. "Under a general equitable theory commonly known as the `trust fund' doctrine, the property of a dissolved business corporation ultimately passes to its stockholders as the actual owners of such property, subject of course to the payment of corporate debts." Friendly Home v.Shareholders Creditors ETC., 477 A.2d 934, 938 (1984) (citingDiPrete v. Vallone, 72 R.I. 137, 141, 48 A.2d 250, 252 (1946)). (Citations omitted.) Accordingly, there is no discharge under this statutory provision.
Finally, the United States Trustee argues that G.L. 1956 § 7-1.1-98 (2), a provision of the "Survival of remedy after dissolution" provision, also operates as a discharge.[10] This argument renders the terms dissolution and discharge synonymous. As a dissolution is not a discharge, the trustee's argument must fail.
Conclusion
In conclusion, this Court finds that the Rhode Island Receivership Statute, G.L. § 1956 7.1.1-90, et seq., has not been pre-empted by the Bankruptcy Code. Receivership statutes provide an equitable remedy for an insolvent corporation. "It cannot be contended that the bankruptcy act [or Code] put an end to the powers of courts of equity in this regard . . ., nor that statutes declaring or regulating this power are generally suspended. . . ." Mader, 254 N.W.2d at 179 (Citations omitted.)
Counsel shall submit an appropriate order.
[1] "Second, this Receivership proceeding, and, in particular, what the Receiver now wishes to accomplish herein, has been pre-empted by the United States Bankruptcy Code and by the fact that the actions the Receiver proposes to undertake against the Trustee to adjust the debtor-creditor relationship between the Trustee and the G-7 Corp. may only be undertaken in such a bankruptcy case and not in a state receivership case." (Objection To Petition To Authorize Receiver To Assume Lease, To Obtain Financing For Construction And To Construct On Property at 1-2.)
[2] See Rhode Island Depositors Economic Protection Corporation's Amicus Curae Memorandum (In Support of The Memorandum of The Receiver); Opposition of Amicus Curae To Objection of Trustee of The Palumbo Realty Trust That The State Receivership Proceeding Is Pre-empted By The United States Bankruptcy Code.
[3] See Rhode Island Bar Association Amicus Curiae's Memorandum Response To United States Trustee's Objection To Disbursing Agent's Motion To Make Distribution of Unclaimed Funds; Rhode Island Banker's Association Amicus Curae Memorandum of Law In Reply To The United States Trustee's Objection To Disbursing Agent's Motion To Make Distribution of Unclaimed Funds.
[4] The Rhode Island Supreme Court has recognized the concept of federal supremacy in the realm of bankruptcy. In Giroux v.Purington Bldg Systems, Inc., 670 A.2d 1227 (R.I. 1996), the Court articulated this principle. "Furthermore, the United States Supreme Court has held that federal bankruptcy law pre-empts any state law that may interfere with the bankruptcy laws or create additional regulations." Giroux, 670 A.2d at 1230 (citingInternational Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929)). (Citation omitted.)
[5] For a more expanded list of cases where state insolvency statutes have been superseded by federal bankruptcy law, See 15a Fletcher, Cyclopedia Corporations § 7366 at 38-39.
[6] Those portions of the Rhode Island Receivership Statute, questioned by the United States, include §§ 7-1.1-90 (a)(2):
"(A) In an action by a creditor:
(i) When it is established that a corporation is insolvent; or
(ii) When it is established that the corporate assets are being misapplied or are in danger of being wasted or lost.
(B) If it is established that the claim of a creditor has been reduced to judgment and an execution thereon returned unsatisfied or that a corporation has admitted in writing that the claim of a creditor is due and owing, the establishment of the facts shall be prima facie evidence of insolvency.
(C) Every petition filed by a creditor for the liquidation of the assets and business of a corporation shall contain a statement as to whether the creditor is or is not an officer, director, or shareholder of the corporation. Every petition for the liquidation of the assets and business of a corporation filed by an officer, director, or shareholder, shall contain (to the best of the petitioner's knowledge, information, and belief) the names and addresses of all known creditors of any class of the corporation.
(3) Upon application by a corporation which has filed a statement of intent to dissolve, as provided in this chapter, to have its liquidation continued under the supervision of the court. The application shall contain (to the best of petitioner's knowledge, information, and belief) the names and addresses of all known creditors of any class of the corporation."
(4) When an action has been filed by the attorney general to dissolve a corporation and it is established that liquidation of its business and affairs should precede the entry of a decree of dissolution."
7-1.1-91 (a), (b), (d), (e), 7-1.1.92, 7-1.1-93, 7-1.1-94, 7.1.1-95 and 7-1.1-98.
[7] See Memorandum In Support of Objection To Motion of Disbursing Agent For Authority To Make Distribution of Unclaimed Funds To State Court Receivers at 7-9 (questioning G.L. 1956 §§ 7-1.1-90 (a)(2), 7-1.1-91 (b) (d), 7-1.1-93, and 7-1.1-95. See also Reply of the United States Trustee To Amicus Curae Memoranda at 4) (questioning G.L. §§ 7-1.1-90 (a)(2), 7-1.1-92, 7-1.1-91, 28-14-6.1, 7-1.1-93, 7-1.1-95 and 7-1.1-98).
[8] The fact that receivership statutes are codification of equitable principles is evinced in the language of the Rhode Island General Laws. For example, G.L. § 7-1.1-91 (a) provides:
"In proceedings to liquidate the assets and business of a corporation the court shall have general equity jurisdiction and power to issue such orders, injunctions, and decrees as justice and equity may require, to appoint a receiver or receivers pendente lite, with such powers and duties as the court, from time to time, may direct, and to take such other proceedings as may be requisite to preserve the corporate assets wherever situated, and carry on the business of the corporation until a full hearing can be had." (Emphasis added.)
Also, Section 7-1.1-97.1 provides:
"Upon the establishment of any of the grounds for liquidation of the assets and business of (1) a domestic corporation or (2) a foreign corporation, to the extent the foreign corporation has assets within the state, set forth in § 7-1.1-90, and upon the establishment that the liquidation would not be appropriate, the superior court shall have full power to appoint a receiver, with such powers and duties as the court, from time to time, may direct, and to take such other proceedings as the court may deem advisable under the circumstances. The provisions of §§ 7-1.1-90-7-1.1-97, inclusive, so far as they are consistent with the nature of the proceeding, shall apply thereto, and in the proceeding the court shall have the full powers of a court of equity to make or enter such orders, injunctions, and decrees and grant such other relief therein as justice and equity require." (Emphasis added.)
[9] Through its reference to Boyd, this court does not intend to infer that an assignment is the same as a receivership proceeding. Rhode Island has an Assignment statute, G.L. 1956 § 10-4-1, et seq. which exists separate and apart from the state's Receivership statute, G.L. 1956 § 7-1.1-90, et seq.
[10] "In addition, the standard two-year `Survival of Remedies' against dissolved corporations applies only to corporations dissolved `by a decree of court when the court has not liquidatedthe assets and business of the corporation as provided in thischapter . . .' G.L. § 7-1.1-98 (2). (Emphasis provided.) Thus, when a decree of `involuntary dissolution' enters after a Corporate Liquidation under the state statute, remedies against that corporation do not survive under R.I.G.L. § 7-1.1-98 (2)." (Reply of The United States Trustee To Amicus Curae Memoranda.)